[No. 28254.   Department Two.   March 8, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Beulah Cummings, Plaintiff,* v. JAMES B. KINNE, *as Judge of the Superior Court for King County, Respondent.*

*In the Matter of the Application of* BEULAH CUMMINGS *for a Writ of Habeas Corpus.*

BEULAH MITCHELL CUMMINGS, *Appellant,* v. MARION R. CUMMINGS, *Defendant,* HELEN DRAPER CUMMINGS, *Respondent.*[1]

[1]Reported in 111 P. (2d) 222.

2

*Peyser & Bailey* and *John D. Cartano,* for relator and appellant.

*Kumm & Hatch,* for respondents.

BEALS, J.—Beulah Mitchell Coutts (nee Mitchell) and Marion R. Cummings intermarried January 25, 1921. Each party had been married previously, both being childless at the time of their marriage. Three sons were born to them: William, born February 3, 1923; Robert, April 1, 1925; and Marion, April 26, 1926. After much marital unhappiness, the parties sought a divorce, each party complaining of the other. Their difficulties, however, were not disclosed in detail be-

fore the court, the parties having agreed upon the details of the separation. An interlocutory order of divorce was entered September 2, 1931, granting a divorce to each party and awarding the custody of the three children to both parties, the order providing, however, that the care, support, and domicile of the children should be, until further order of the court, with Marion R. Cummings, subject to the right of visitation by the mother at all reasonable times and places. A final decree of divorce was entered March 22, 1932.

Mr. Cummings maintained a home for his children, employing housekeepers, until, during the month of August, 1934, he married Helen Draper Savage, who was then approximately thirty-five years of age, the family continuing to reside at 1105 Greenwood avenue, Seattle, the home formerly maintained by Mr. Cummings.

Marion R. Cummings died September 15, 1935, leaving a will in which the Seattle-First National Bank of Seattle was named as executor. His estate was appraised at $45,700. By his will, Mr. Cummings set up a trust for the benefit of his mother, his children, and his second wife.

It appears that Mrs. Beulah Cummings is possessed of some property, enjoying, as she testified, during a considerable portion of the period with which we are concerned, an income of $185 per month.

Upon the death of Mr. Cummings, Beulah Cummings became immediately entitled to the custody of her sons. She, however, took no steps to establish a home for herself and her children, but permitted the boys to remain with their stepmother, who continued to occupy the family dwelling and to care for the children, who received an income from the trust established for their benefit by their father. It does not appear that the in-

come from this fund was greater than the amount required for the reasonable support, maintenance, and education of the boys.

After her divorce, Beulah Cummings resided in an apartment in Seattle, where she lived until August, 1934, when she moved to the home of one Mrs. Barton, in West Seattle, where she remained as a paying guest until October, 1936, when she moved to another apartment in Seattle.

During the month of June, 1940, Beulah Cummings, for the first time, sought the custody of her children. They were then, respectively, seventeen, fifteen, and fourteen years of age. June 13th, Beulah Cummings filed in the divorce action her petition seeking a modification of the interlocutory order, in so far as the same provided for the custody of the children, and an order was issued, requiring Helen Cummings to show cause why the custody of the children should not be transferred to Beulah Cummings. After answer to this order, it was stipulated that the proceeding should be considered as a proceeding in the nature of a writ of *habeas corpus*. While this matter was pending, the three boys filed in the superior court their petition asking that they be adjudged dependent children; that they be made wards of the court; and that their custody be awarded to their stepmother, Helen Cummings. This petition was filed in the juvenile department of the superior court. The two proceedings were consolidated and together assigned for trial.

During the course of the hearing, some question having been suggested as to the correctness of the procedure which had been followed, a formal application for writ of *habeas corpus* was filed by Beulah Cummings, which, by stipulation, was consolidated with the pending matters then in hearing.

After a lengthy trial, the court decided that the three boys should be declared wards of the superior court, and their custody, subject to further order of the court, awarded to Helen Cummings.

The trial court embodied its decision, first, in an order entered in the proceeding before the juvenile court, the order declaring the children to be dependent children, within the intent of the statute, making the children wards of the court, and directing that they continue to reside in the custody of their stepmother, Mrs. Helen Cummings, until further order of the court, it being provided that Beulah Cummings be permitted to have the children visit her at any and all reasonable times. Beulah Cummings has brought this order before us for review by way of certiorari.

On the same date, the court made an order discharging the writ of *habeas corpus,* and entered a decree entitled in the divorce case, the decree referring to the order just previously entered in the juvenile court proceeding and by reference making that order a part thereof, the decree declaring that Beulah Cummings is incapable of exercising the necessary control over the children; that the best interests and welfare of the children require that they should remain in the environment and place of abode where they had previously been living; and that, until further order, Helen Cummings should continue to have their care and custody. The decree then formally declared that the petition of Beulah Cummings for the custody of her children be denied. From this decree, and from the order discharging the writ of *habeas corpus,* Beulah Cummings has appealed. The certiorari proceeding and the appeal have been, by order entered by this court, consolidated for hearing, and will be considered together.

Mrs. Beulah Cummings will be referred to as appellant, Mrs. Helen Cummings as respondent, and the

boys, who are also respondents here, as the children.

Appellant assigns error upon the overruling of her demurrer to the petition of the minor children asking that they be made wards of the juvenile court; upon the overruling of her challenge to the sufficiency of the evidence in connection with the juvenile court proceeding; upon the ruling of the court that the children were dependent children; and upon the decree declaring them to be wards of the juvenile court. Appellant also assigns error upon the introduction of evidence over her objection; upon the court's ruling that appellant was not a fit and proper person to have the custody and control of her children; upon the denial of her application for a writ of *habeas corpus*; upon the refusal of the trial court to grant the writ and direct that the custody of her children be turned over to her; and upon that portion of the decree awarding the custody of the children to respondent.

All the respondents join in a motion to dismiss the appeal, asserting that appellant, by enforcing, pending the appeal, that portion of the order entered in the juvenile court proceeding giving her the right to have her children visit her, has accepted the benefits of that order, and has thereby waived her right to review the same before this court, and is estopped from further prosecuting this appeal.

It appears that, December 13, 1940, after this appeal had been taken, appellant, being of the opinion that respondent had not proved cooperative in allowing appellant the right to have her children visit her, applied to the juvenile court for an order directing respondent to show cause why she should not be adjudged in contempt for failure to comply with the order. A hearing was held on this petition, with the result that respondent was adjudged not to be in contempt, but an order was made directing that the children visit appellant at

her home. Respondents argue that, because of the facts above stated, this appeal should be dismissed, citing several authorities to the effect that "a party who enforces his judgment or decree generally waives his right to appeal." 4 C. J. S. 423, § 220.

Respondents also rely upon the case of *Harris v. Harris*, 89 F. (2d) 829, in which the United States circuit court of appeals for the District of Columbia held that a wife who had been granted a divorce, and who, without asking for alimony *pendente lite,* demanded and received the alimony provided for in the decree, had waived her right to appeal.

The case of *Kleppe v. Kleppe,* 103 Ind. App. 405, 8 N. E. (2d) 93, is also cited. In that case, a divorce was granted at the suit of the husband, the wife having been awarded the custody of a child, the husband being required to pay for the child's support. The wife appealed, and while the appeal was pending, cited her husband for contempt for failure to make the payments provided for by the decree. On motion, the wife's appeal was dismissed. This ruling seems open to serious question, if no allowances *pendente lite* could be made pending appeal, but in any event, the case is not here in point.

The right of a parent to see a child is nowise comparable to the right to receive money payments provided for by a decree. The order of the juvenile court should have been voluntarily, and in the utmost good faith, complied with by respondent, and no situation should have arisen which would require appellant to seek the aid of the court in seeing her children. The right of appellant to see her children is a natural right which exists until terminated by judicial action. By asking the aid of the court in seeing her children, appellant did not seek a benefit under the decree in the ordinary sense; she sought to enforce a natural right which the

decree limited, rather than granted. The children were wards of the court, not of respondent.

Respondent's motion to dismiss the appeal is without merit, and the same is denied.

It now becomes necessary to make a short statement of the facts as disclosed by the record. We do not desire, nor is it necessary, to state these facts in detail. Appellant testified that, after the birth of her first child, she suffered from phlebitis, and was for some time in poor health. It appears from the record beyond question that appellant, during at least a considerable portion of her married life, and for many years after her divorce, indulged to excess in intoxicating liquor. This appears from uncontroverted evidence, and indeed, from the testimony of appellant herself. It is contended on appellant's behalf, however, that for a year and a half prior to her application for the custody of her children, she had completely abandoned the use of intoxicants, and was in no danger of again becoming addicted to their use. We find no reason to doubt that appellant has, as she testified, changed her course of life for the better, and that she is firmly convinced that she will never again drink to excess.

The fact remains, however, that for many years, and for over three years after Mr. Cummings' death, she drank to excess, and during the latter period, although financially well able to do so, apparently made no effort whatsoever to establish a home for herself and her children, but on the contrary allowed them to grow up under the care and custody of their stepmother, and during those years when they particularly needed the care and guidance of a parent, allowed them to remain with one who was under no obligation to care for them, but who was willing to do so, and who during that period gained the affection of the children and appar-

ently has definitely taken the place in their lives which should have been filled by appellant.

▇▇▇▇ Appellant assigns error upon the admission of considerable evidence, over her objection. As to most of this evidence, she contends that it related to her habits and conduct at a period too remote from the time of trial to render such evidence material. In such a case as this, such evidence is admissible, the weight which the court should attach thereto to be determined in the exercise of sound judicial discretion. It should be assumed that any evidence which was introduced concerning immaterial matters was disregarded by the trial court, and most of the evidence, whether oral or by way of exhibits, of the admission of which appellant complains, was properly admitted. Of course, this court disregards any evidence which was improperly admitted. We find no error in connection with these assignments of error.

▇▇▇▇ Appellant vigorously attacks the action of the trial court in making the children wards of the juvenile court, contending that the statute known as the juvenile court law (Rem. Rev. Stat., § 1987-1 [P. C. § 593] *et seq.*) does not contemplate such a situation as appears in the case at bar, and that the court erred in finding that the three boys were dependent children. In § 1987-1, the scope of the act is defined as follows:

"This act shall be known as the 'Juvenile Court Law' and shall apply to all minor children under the age of eighteen years who are delinquent or dependent; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children."

A dependent child is defined in eighteen numbered paragraphs, two of which read as follows:

"(5) Who has no parent or guardian; or who has no parent or guardian willing to exercise, or capable of exercising proper parental control; or . . .

"(7) Whose home by reason of neglect, cruelty or depravity of its parents or either of them, or on the part of its guardian, or on the part of the person in whose custody or care it may be, or for any other reason, is an unfit place for such child."

The section concludes with the following language:

"For the purpose of this act only, all delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the court as hereinafter provided."

In such a situation as was presented to the trial court, it was manifestly advisable that, at an early stage in the proceedings, the children be made wards of the court. Such an order has the effect of placing a wholesome restraint upon the activities of all parties concerned and, at the same time, gives the court ample opportunity to ascertain facts in connection with the matter, which facts might not otherwise be disclosed, and to more readily enforce its orders which are important in connection with the welfare of the children. The statute warranted the order made, and the court was amply justified in holding that the children should be made wards of the court, and we find no error in this order. *In re Day,* 189 Wash. 368, 65 P. (2d) 1049.

The trial court in a comprehensive memorandum decision, delivered orally at the close of the case, summed up the situation as it appeared at the close of the trial. The court observed that appellant had left her children at least during the year 1930, if not a year or two earlier; that she instituted a divorce action in which she did not ask for the custody of her children, but was apparently willing to leave them with their father, under the care of paid housekeepers.

It is, of course, matter of record that appellant made no effort to procure the custody of her children until June, 1940, when they were approaching young man-

hood, and well able to form their own opinions as to the way of life which appeared to them more beneficial and pleasant. The boys testified in the case, were interrogated by the court, as well as by counsel for the respective parties, and apparently answered with frankness and honesty all questions propounded to them. They all, without hesitation, expressed the wish to remain with their stepmother, for whom they apparently entertain a warm affection as well as respect.

The wishes of a child in such a case are not in any event controlling, and the child's statements and testimony must be carefully scrutinized and weighed. Often such testimony has little or no value, and of course it is subject to influence and suggestion, as well as being very often based upon childish desires or pique. Much depends on the age and mental development of the child, as indicated in the record. A trial court is well able to place a proper value upon such matters. In the case at bar, we are of the opinion that the trial court gave no more than proper weight to the boys' testimony.

We thoroughly agree with appellant in her argument that the rights of parent and child are reciprocal; that the parent normally has the right to the custody of the children; that the children owe a duty to the parent; and that, for the sake of both, the family life should not be interrupted by judicial proceedings, unless the facts clearly show that the welfare of the children will be substantially subserved by such action.

It seems clear that the brothers should not be separated unless such separation be absolutely required. The eldest boy is now eighteen years of age, and without the jurisdiction of the juvenile court law. To remove a lad of that age from the home where he has lived happily with his younger brothers, under most excellent surroundings, for many years, and order him

to live with appellant, when he has stated definitely and positively that he does not wish to make the change, would be to assume a grave responsibility. At the same time, the younger boys should not be separated from their elder brother, or from each other. In such a case as this, the trial court has many advantages in reaching a correct conclusion, which are not enjoyed by an appellate court, which can only read the record. This is, of course, true in any case in which conflicting testimony is introduced, but it is preeminently true in actions such as this.

The testimony of friends and teachers, as well as the testimony of the boys themselves, demonstrates that the lads have been well reared. The evidence suggests a doubt that appellant is temperamentally fitted to maintain a wise and discriminating discipline over her sons. She is inexperienced in the care of youths of their ages. A reader of the record before us cannot doubt her present love for her children, but wonders whether she might not be too indulgent at times, and fail to comprehend the problems which she would be called upon to decide. The trial court was of the opinion that the welfare of the children required the denial of appellant's petition for their custody.

The case of *In re Day, supra,* is extensively discussed by both parties to this appeal. The facts in that case differ materially from those in the case at bar. After the separation of their parents, the Day children remained with their mother until her death, and immediately after that event, the father demanded custody of his children. The eldest child was then thirteen years of age, and the youngest eight. In the case at bar, the children are much older, and appellant for years permitted them, without objection on her part, to remain in a home where they have received excellent care, from which she now seeks to remove them against their

wishes. The law provides that in certain cases, such as adoption and guardianship proceedings, the wishes of a child over fourteen years of age shall be considered.

Many other authorities are cited by the respective parties to this appeal, but none is particularly helpful in determining questions to be decided.

After careful consideration, we are convinced that the orders and decree entered by the trial court were right, and should be affirmed. The orders are not final, the court reserving jurisdiction to enter other orders at any time.

The determination of this controversy should clear the air and afford a basis for a readjustment which will lead to better and more natural relations between the parties. The boys will soon be of age, and should realize that the devotion which they feel toward their stepmother is nowise incompatible with filial affection for their mother. At the same time, appellant must realize that the control of the children is vested in another, and that she should do nothing to interfere with that control and the discipline which accompanies it.

It is to be hoped that the superior court, in the exercise of its wardship over the children, will find no occasion for criticism of the conduct of any party to this record.

The order and decree appealed from are affirmed.

ROBINSON, C. J., MILLARD, SIMPSON, and JEFFERS, JJ., concur.