[No. 29473. Department One. November 20, 1944.]

W. J. FUHRMAN et al., Appellants, v. H. W. ARVIN, as Chief Probation Officer of Spokane County, Respondent.[1]

J. F. Aiken, for appellants.

Leslie M. Carroll and E. C. Richardson, for respondent.

STEINERT, J.—This is an appeal from an order denying a petition in which W. J. Fuhrman and Ethel Fuhrman, husband and wife, sought to have awarded to them the temporary care, custody, and control of two minor children who were strangers to the blood of the petitioners but who were alleged to have been abandoned by their parents. We shall hereinafter refer to the petitioners as appellants, and to the chief probation officer of the juvenile court of Spokane county, who resisted the petition, as respondent.

[1]Reported in 153 P. (2d) 165.

The two children involved in this proceeding are Delores Radtke, who was born April 17, 1935, and Ethel Radtke, who was born April 4, 1937. The parents of these two children are Herbert E. Radtke and Delilah J. Radtke, who were united in marriage in June, 1934, and thereafter lived in Spokane until some time in 1943. Two other children, several years younger than the two mentioned above, were born of this union, but they are not directly involved in this appeal.

Appellants, W. J. Fuhrman and Ethel Fuhrman, were residents of Spokane for many years prior to 1943. They first became acquainted with Mr. and Mrs. Radtke in the latter part of 1936 or the early part of 1937, when Delores was about seventeen months old; this was a few months prior to the birth of Ethel. Mrs. Fuhrman was then about forty-one years of age, and Mr. Fuhrman was about ten years her senior. The record does not disclose whether or not Mrs. Fuhrman has been married more than once, but it does appear that she has had three children, none of whom, however, was living during the period involved in this proceeding.

At the time the two families became acquainted with each other, the Radtkes were not only in straitened financial circumstances, but also were having considerable marital difficulties which continued steadily throughout their married life. A short time before the second child, Ethel, was born, the Radtkes were evicted from the apartment in which they lived and were destitute, being without food or money. In that condition, they came to the home of the appellants, bringing with them the infant Delores, and were given sustenance and shelter. Although the Fuhrmans were people of modest circumstances, the record is replete with evidence of their exceeding charity and kindness toward the Radtkes over a long period of time.

Shortly before Mrs. Radtke was to be confined, in April, 1937, she went to the home of one of her relatives where she remained until after the baby, Ethel, was born. In the meantime, Mr. Radtke and the infant Delores remained temporarily with the Fuhrmans and were cared for by

them.  Mrs. Fuhrman devoted a great part of her time to preparing food and making clothes for the child.

A week or ten days after the birth of Ethel, Mrs. Radtke seems to have incurred the displeasure of her relative and was ordered to leave the place where she was then staying. She thereupon returned to the home of the Fuhrmans, bringing the new-born babe with her.  The relations between Mr. and Mrs. Radtke seem to have been severely strained about this same time, however, and within a few days thereafter Mrs. Radtke departed, leaving both children with the Fuhrmans, and some time later joined a "carnival" traveling about the country.  From that time forward until March, 1942, as will appear later in more detail, the Fuhrmans had the exclusive care and custody of Ethel, the younger of the two children, with the knowledge, consent, and desire of Mr. Radtke.  At various intervals, and for a great part of the time prior to March, 1942, and likewise with the desire and consent of Mr. Radtke, the Fuhrmans also had the care and custody of Delores, the older of the two children, while at other times during that same period the child was shifted about from one place to another.

In the summer of 1937, the Radtkes appear to have established a sort of reconciliation with each other and in April, 1938, a third child was born to them.  However, marital difficulties soon developed again, and in September, 1938, when the third child was but five months old, Mrs. Radtke brought an action against Mr. Radtke for divorce.  That action apparently never came to trial, and it appears that later the Radtkes again became temporarily reconciled. On July 23, 1940, a fourth child was born to them.  During all of this period, however, the second child, Ethel, remained continuously with, and was supported entirely by, the Fuhrmans.  The oldest child, Delores, also spent a great part of her time during that same period with, and under the care of, the Fuhrmans, as explained above.

As time went by, the financial and marital difficulties existing in the Radtke family grew steadily worse.  In September, 1941, Mrs. Radke made application to the county

welfare department of Spokane county for assistance to provide for the children. An investigation followed, with the result that a case worker in the welfare department filed a dependency petition alleging that the four children were destitute, having been deserted by their father, Herbert Radtke, whose residence was alleged to be unknown.

A hearing upon the petition was had before the juvenile court of Spokane county and orders were entered declaring each of the four children a ward of the court, and committing Ethel to the care and custody of the appellants, Delores to the care and custody of Mrs. Radtke's parents, and the other two children to the care and custody of two other women, respectively. It will be borne in mind that when these orders were entered Ethel was, and for over four years had been, in the custody of the Fuhrmans. The order as to Ethel simply continued that custody in the Fuhrmans, but as a ward of the court.

In November, 1941, the Radtkes evidently had another one of their many reconciliations. At any rate, on the 26th day of that month they reported to the juvenile court probation office that they were living together again. They asked for the custody of their four children upon the representation that Mr. Radtke expected to find employment and establish a home. They were directed to establish a home first and await an investigation and report to be made concerning them.

In an effort to rehabilitate the Radtke family, the four children were returned to the parents on March 27, 1942, by order of the juvenile court entered in the above-mentioned dependency proceeding. That order again declared the children to be wards of the court and further recited that such custody by the parents was to continue until the court should order otherwise. The Fuhrmans promptly delivered Ethel to the juvenile court as they had been directed to do. The custodians of the other three children did likewise.

In July, 1942, Mr. Fuhrman obtained employment as a sheet metal worker at the Lake Washington Shipyards

located in Kirkland, near Seattle. His wages since then have amounted to at least two hundred fifty dollars a month. Whether Mrs. Fuhrman accompanied her husband to Kirkland at that time or followed later, the record does not clearly disclose, but it does appear that they have since then established a home there, consisting of four rooms and a bath, located in a good residential district, near a school and a church.

In September, 1942, trouble again arose between Mr. and Mrs. Radtke, in consequence of which they, without consulting the court, restored the two younger children to the two women in whose custody they had previously been. In the meantime, also, Mrs. Fuhrman, who apparently was then still in Spokane, had charge of Ethel for a short while during an illness of Mrs. Radtke.

On September 27, 1942, Mr. Radtke placed Delores and Ethel in the Spokane Children's Home, with the understanding that he would pay for their care, through the juvenile court. With the exception of a two-month vacation period, these two girls have remained in the Home ever since that time. The record shows that, pursuant to that understanding, Mr. Radtke paid seventy-five dollars for each of the months of October and November, 1942, and January, February, and March, 1943.

In January, 1943, the trouble between Mr. and Mrs. Radtke culminated in a second action for divorce, brought by her against him on the grounds of cruelty and personal indignities. An interlocutory decree of divorce was entered February 11, 1943, and a final decree was entered August 18, 1943. Both decrees declared the four children to be wards of the court, directed Mr. Radtke to pay to the juvenile court the sum of seventy-five dollars a month for their care and maintenance, and ordered that jurisdiction of the cause be retained for the decision of any question affecting the custody of the children.

While the divorce action was pending, a notice was issued by the juvenile court, in the dependency proceeding mentioned above, stating that a further hearing would be had on the original petition in that proceeding to consider

whether the parents and next of kin should be deprived of the custody of the four minor children and such custody awarded to some suitable person, association, or institution. Upon a hearing of that matter, it developed that in about the month of May, 1943, Herbert E. Radtke had been inducted into the United States Army; that at about the same time he had made application for authority to allot a portion of his pay for the support and maintenance of his children; and that on July 1, 1943, the application had been approved. It further appeared that since October, 1942, he had made monthly payments of seventy-five dollars, as stated above. The juvenile court thereupon entered a formal order on September 28, 1943, declaring that, on the record before it, the court would not hold that Mr. Radtke had abandoned his children or forfeited his rights as a father. The order directed, however, that the children continue to be wards of the court and that Ethel and Delores remain in the care and custody of the Spokane Children's Home until the court should direct otherwise.

The record further discloses that, after making such allotment, Mr. Radtke, accompanied by Mrs. Radtke and her mother, called at the office of the juvenile court department and in an interview with the persons in charge stated emphatically that he did not want the Fuhrmans to have custody of Ethel, but desired that both Ethel and Delores remain at the Spokane Children's Home. The record also discloses that in an interview with Mr. Radtke the judge of the juvenile court had assured him that the custody of the children would not again be changed during his service in the army, except upon his approval or else upon a hearing at which he had an opportunity to appear. Why Mr. Radtke was so insistent on keeping the children at that institution, we do not know. Much less do we understand why he should not want the Fuhrmans to have either Ethel or Delores during his absence. We only state what the record shows.

During the summer of 1943, while Mr. and Mrs. Fuhrman were living in Kirkland, they were permitted by the

superintendent of the Spokane Children's Home to take and keep the two children, Ethel and Delores, for a period of two months. In September, Mrs. Fuhrman brought them back to the Home. Later, Mrs. Fuhrman returned to Spokane again for a visit with friends and with the two children. While on that visit she was asked by the superintendent of the Home to take employment there for a while because one of the women employees had sustained an injury. In order to be near the children, Mrs. Fuhrman accepted the position and remained there from December, 1943, until shortly before the trial of this action in 1944.

In the meantime, however, in October, 1943, which was shortly after the children had been brought back from their vacation in Kirkland, appellants, through Mrs. Fuhrman, filed their petition asking that they be granted the temporary custody and control of Ethel and Delores. The petition was amended in March, 1944, and the trial was held in June. It was disclosed at the trial that during the time the children were at the Spokane Children's Home, Mr. Radtke had paid to the juvenile court a total sum of $1,472.

Our statement of the case as made above is taken from the evidence adduced at the trial upon the petition filed by the appellants. Neither Mr. Radtke nor Mrs. Radtke was present at the hearing on the petition, for the reason that Mr. Radtke was then somewhere in Europe with the army, and the whereabouts of Mrs. Radtke were unknown. She does not seem to have manifested any interest in the children since they were placed in the Spokane Children's Home. The present action was waged solely by the appellants, the Fuhrmans, on the one side, and the probation officer of the juvenile department on the other.

The one question presented upon this appeal is whether, under the facts of this case, the welfare of the two minor children demands that their temporary custody and control be given to the appellants.

In cases arising under the juvenile court law, Rem. Rev. Stat., §§ 1987-1 to 1987-18 [P. C. §§ 593 to 610], inclusive, where the court is called upon to determine the custody of a child, we have uniformly held that the welfare

of the child is the paramount consideration. *Lovell v. House of the Good Shepherd*, 9 Wash. 419, 37 Pac. 660, 43 Am. St. 839; *Clark v. Clark*, 92 Wash. 450, 159 Pac. 702; *McClain v. McClain*, 115 Wash. 237, 197 Pac. 5, 202 Pac. 173; *Brock v. Brock*, 123 Wash. 450, 212 Pac. 550; *In re Allen*, 139 Wash. 130, 245 Pac. 919; *Loomis v. Loomis*, 144 Wash. 116, 256 Pac. 1032; *Bigelow v. Bigelow*, 148 Wash. 138, 268 Pac. 597; *Broesch v. Broesch*, 159 Wash. 409, 293 Pac. 464; *In re Penner*, 161 Wash. 479, 297 Pac. 757; *Ostrander v. Ostrander*, 176 Wash. 669, 30 P. (2d) 658; *In re Day*, 189 Wash. 368, 65 P. (2d) 1049; *In re Williams*, 10 Wn. (2d) 542, 117 P. (2d) 202; *Eliason v. Eliason*, 10 Wn. (2d) 719, 118 P. (2d) 170; *Campbell v. Campbell*, 19 Wn. (2d) 410, 143 P. (2d) 534. Accord: *In re Fields*, 56 Wash. 259, 105 Pac. 466; *State ex rel. DeBit v. Mackintosh*, 98 Wash. 438, 167 Pac. 1090; *State ex rel. Cummings v. Kinne*, 8 Wn. (2d) 1, 111 P. (2d) 222.

This principle has been enunciated so many times, is so essentially right, and is so fully recognized by the various superior court judges hearing juvenile matters, that it must be presumed in any given case that the trial judge had that principle in mind and conscientiously endeavored to apply it to the facts of the particular case.

We have also frequently and consistently held that, in matters affecting the custody of minor children, the judgment of the trial court will not be disturbed except for manifest abuse of discretion. *Dyer v. Dyer*, 65 Wash. 535, 118 Pac. 634; *Ayers v. Ayers*, 188 Wash. 540, 62 P. (2d) 1358; *Eliason v. Eliason, supra; Sumner v. Superior Court*, 19 Wn. (2d) 5, 140 P. (2d) 784; *Campbell v. Campbell, supra*. This must necessarily be the rule to be followed by this court in such cases because, from the very nature of such proceedings, the trial judge has a far better opportunity than have we to ascertain and determine the conditions affecting the welfare of the particular child involved in the proceeding. That judge not only has the witnesses immediately before him and thus is better able to evaluate their testimony, but, what is more important, he has had the benefit of the investigation, findings, and advice of the

probation officer and others connected with the juvenile department. Frequently, also, as in this case, the child in question has furnished a problem for consideration by the court over a long period of time, and a decision as to its welfare is arrived at, not from a single circumstance nor from the desires of a particular individual, however worthy, but from all the facts and circumstances presented by the case. In this way only can the court arrive at a fair and just solution of what in any event is a difficult, and often regrettable, problem.

In the case at bar there can be no question but that these two minor children would be given a good home by the Fuhrmans and would receive from them far better care and attention than they ever received from their own parents. No less than seven witnesses, women who had lived in the neighborhood of the Fuhrman home for years, testified to the motherly care that Mrs. Fuhrman had given these children while with her. There can be no doubt that both Mr. Fuhrman and Mrs. Fuhrman love these children and would do as much for them as they would for children of their own. They are to be highly commended for what they have done for the entire Radtke family in years past, and, looking simply to the cold record, we confess our inability to understand Mr. Radtke's attitude toward the Fuhrmans. It seems to us that, under the circumstances, he would not only be willing, but also glad, to have the two little girls under the care, control, and supervision of Mr. and Mrs. Fuhrman while he is away in military service.

On the other hand, we also apprehend, in part at least, the problem facing the trial judge. It is to be remembered that, at the time of the trial, Ethel and Delores had not been living with the Fuhrmans for two years; hence, it was not a matter of suddenly uprooting them from surroundings to which they were then accustomed. It is also clear from the record that, if the custody of the children were given to the Fuhrmans, it would be only temporary; they themselves concede that they would be required to surrender the children to the father on his return from military ser-

vice. Then, again, as suggested by the trial court, the children would be taken out of Spokane county to Kirkland, where the probation officer of Spokane county would not be in as close touch with them as otherwise. Finally, it also appears from the record that the father had expressed his preference for the Spokane Children's Home as the custodian of the children, had made provision for their support in that institution, and had been assured by the juvenile court that the custody would not be changed in his absence or unless he was given an opportunity to be heard thereon.

Although Mr. Radtke may not have properly discharged his parental duties toward the children in former years, it must be conceded that he endeavored to, and did, make provision for their care and support from the time of the divorce. It may be that in failing or refusing to place the two children with the Fuhrmans he did not make the wiser choice, but that was his right, and at least he did take the only other available course. Besides, it stands of record that his course received the approval of the juvenile court. It may also well be that his thought was that it was preferable to have the children remain in the vicinity of their grandparents; further, that upon his return from military service he would have a better opportunity of seeing the children if they were in Spokane than if they were in Kirkland.

It is unfortunate that his choice deprives the children of the opportunity of being with the Fuhrmans, who would not only provide them with the physical necessities of their young lives but would also bestow upon them a love and affection such as should be accorded by the parents themselves. However, the mere fact that strangers to the blood might be able to give a child better clothing, surroundings, and educational facilities than it would otherwise get, and might also manifest toward it greater affection than it would otherwise receive, would not of itself be sufficient to compel a change of custody of the child, unless it could be said that the welfare of the child required it.

We do not wish to be understood as holding that the juvenile court is bound by the preference expressed by Mr. Radtke with reference to the custody of the children, or that the children are to be kept indefinitely at the Spokane Children's Home merely because Mr. Radtke may have been told that they would be kept there. If for any reason the welfare of these children should at any time require that they be placed elsewhere, the court has full power, and should not hesitate, to make an order to that effect.

In view of all the facts and circumstances of the case, we are not at present able to say that the trial court manifestly abused its discretion in denying appellants' petition. The order of denial is therefore affirmed.

SIMPSON, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.