[No. 31772. *En Banc.* December 6, 1951.]

*In the Matter of the Welfare of a Minor.*

E. B. WADE, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent.*[1]

[1]Reported in 238 P. (2d) 914.

*Durham, Guimont & Durham* and *Edgar R. Rombauer,* for appellant.

*Charles O. Carroll* and *Dale E. Sherrow,* for respondent.

HILL, J.—We have here a somewhat unusual situation; the father of an illegitimate child is making a strenuous endeavor to secure its possession and custody. The father, E. B. Wade, consulted four different lawyers; his counsel here did not represent him at the hearing in the juvenile court.

The rights of a putative father and the procedure for asserting them seem to be somewhat less than crystal clear. Even the able and experienced juvenile court judge expressed the view that the father of an illegitimate child has no legal rights.

The short and easy disposition of this case would be to say, in a *per curiam* opinion, that Mr. Wade is attempting to appeal from an order of the juvenile court and that, since such orders are not appealable, the appeal must be dismissed. This would leave Mr. Wade still floundering in a procedural morass, and it would seem not to be amiss for us to point out some firm ground upon which a putative father may stand in an effort to secure custody of his illegitimate child. It is to be understood that, should Mr. Wade hereafter make another effort to establish his right to have custody of his illegitimate child, we do not, by what we say hereinafter, prejudge the issue of whether the child is a dependent child within the purview of Rem. Rev. Stat., § 1987-1 [P.P.C. § 359-1], the issue of abandonment of the child by its mother, or the issue of Mr. Wade's fitness to have its custody.

Apparently the only other occasion on which this court has had before it the claim of a father of an illegitimate child to its possession and custody was in *State ex rel. Smith v. Superior Court* (1945), 23 Wn. (2d) 357, 161 P. (2d) 188. In that case, we recognized that, on the death of the mother of two illegitimate children, their father was entitled to

have their custody unless it was established that he was an unfit person. We held in that case that such unfitness was conclusively established.

(Parenthetically, we should note that a year earlier we had before us the question of whether the father of an illegitimate child who had not consented to its adoption was entitled to notice of the hearing in an adoption proceeding. *In re Blake* (1944), 21 Wn. (2d) 547, 151 P. (2d) 825. We there held that, under the express provisions of our 1943 adoption statute, the father's consent was not necessary and he was not entitled to notice. Rem. Supp. 1943, §§ 1699-4 and 1699-9, since amended.)

While we cited no authority in the *Smith* case, *supra*, relative to the right of the father to the custody of an illegitimate child after the death of the mother, we there recognized a rule generally though not universally adopted, that the right of the father of an illegitimate child to its custody and control, although inferior to that of the mother, is superior to that of any other person. *People ex rel. Meredith v. Meredith*, 272 App. Div. 79, 69 N. Y. S. (2d) 462; *Aycock v. Hampton*, 84 Miss. 204, 36 So. 245, 65 L. R. A. 689; 7 Am. Jur. 669, Bastards, § 63. See annotations: 17 Ann. Cas. 474, at p. 477; 65 L. R. A. 689, at p. 693.

It must be recognized that Mr. Wade (assuming his fitness) would have a right to the custody and control of his illegitimate child if the mother had died or abandoned the child.

We come now, somewhat belatedly, to a recital of the facts in this case. After a man and wife, who need not be named, had commenced an adoption proceeding, Mr. Wade filed a petition (September 29, 1950) in the juvenile court, alleging: (a) that he is the father of an illegitimate child born September 5, 1946; (b) that the mother left the child with him when it was about a year old, saying that she wanted nothing further to do with him or the child, and that from that time until August 12, 1950, the mother never visited the child or in any way expressed any affection or concern toward it; (c) that during that period he took care of the child and maintained it in the homes of friends; (d) that

August 12, 1950, the mother took the child surreptitiously, and that he had been unable to locate it since that date but believed it was in the home of the man and wife who were petitioning for its adoption; (e) that the child was taken from his custody by the mother for the sole purpose of punishing him, and to deprive him of the association, custody, and affection of the child. The prayer of the petition was that the child be awarded to him, and that an order be entered depriving the mother and all others of any claim to its custody, and that petitions in all matters pertaining to the child, including the petition for adoption, be heard before the juvenile court.

As we construe this petition, it says that the child was abandoned by its mother, that the father has cared for it and desires to do so, and that it was wrongfully taken from his possession by the mother and turned over to third parties.

 The juvenile court does not have jurisdiction over all juveniles, nor is every child a ward of the court; its jurisdiction being limited to delinquent or dependent children. *In re Hudson* (1942), 13 Wn. (2d) 673, 126 P. (2d) 765; *Stobert v. Stobert* (1946), 24 Wn. (2d) 498, 116 P. (2d) 180. Rem. Rev. Stat., § 1987-5 [P.P.C. § 359-9], provides that petitions invoking the jurisdiction of the juvenile court " . . . shall contain a statement of facts constituting such dependency or delinquency, as defined in section 1987-1." We find in Mr. Wade's petition no allegations that bring this child within any of the eighteen classifications of dependency. It would seem that an application for a writ of *habeas corpus* would be the appropriate remedy, rather than a petition to the juvenile court, which had no jurisdiction under the facts alleged.

However, the juvenile court assumed jurisdiction, and Mr. Wade's petition and the adoption proceeding were consolidated for hearing by an order dated October 27, 1950. Thereafter (December 15, 1950), a notice and summons was issued by the clerk of the juvenile court to both Mr. Wade and the mother, notifying them that a petition had been filed in the office of the clerk of the juvenile court to

have the child declared dependent, and fixing January 17, 1951, as the date on which the petition would be heard. So far as the record before us discloses, there was no petition before the court except that of Mr. Wade heretofore referred to, asking that the mother be deprived of custody of the child and that it be awarded to him.

The court first heard the testimony of Mr. Wade in support of his petition. He testified concerning the parenthood of the child, admitted an original disclaimer of parenthood during the period of pregnancy, but stated that from the time he first saw the child he was convinced that it was his and wanted to provide for it. He admitted subsequent illicit relationships with the child's mother and his refusal to marry her. It developed that Mr. Wade had attended college; had developed a successful business; had recently sold some property for thirty-two thousand dollars; had bought a duplex house for fourteen thousand dollars with the intention of making a home for himself and the child; had bought clothes for the child and had paid sixty dollars a month for its care in three different homes; and that he loved the child and wanted to adopt it.

While his explanation of his failure to marry the mother and thus legitimatize the child was not very convincing, we find nothing in the record other than his relationships with her to warrant the juvenile court's stigmatizing him as unfit to have the custody and control of the child, or any evidence that the child had not been well cared for while in his possession.

The juvenile court, after hearing Mr. Wade, announced that his petition would be denied and then proceeded with the hearing on the petition for adoption filed by the couple to whom the mother had delivered the child. For reasons not here material, the trial judge stated in a memorandum decision that he would deny their petition. An order was entered in the juvenile court proceeding February 9, 1951, one paragraph of which is as follows:

"IT IS THEREFORE ORDERED that that portion of the petition of E. B. Wade (Earnest Wade), filed herein on the 29th day

of September, 1950, seeking the custody of said child . . . for himself, be and the same is hereby Denied."

While we entertain serious doubts as to whether the child involved in this proceeding is a dependent child within the purview of Rem. Rev. Stat., § 1987-1, in the absence of facts showing that Mr. Wade is unfit to have the custody of the child abandoned by the mother, and while we do not believe that the evidence is sufficient to sustain the finding that Mr. Wade is unfit to have the custody of his child, we are "stymied" in any effort to accord him relief due to the fact that he is here attempting to do what cannot properly be done, *i.e.*, appeal from an order of the juvenile court.

We have heretofore pointed out that there is no provision in the juvenile court law (Laws of 1913, chapter 160, p. 520, as amended; Rem. Rev. Stat., §§ 1987-1, 1987-3 to 1987-11, 1987-14 to 1987-18, inclusive, Rem. Rev. Stat., (Sup.), § 1987-2, Rem. Supp. 1945, §§ 1987-12, 1987-12a, 1987-13) for an appeal to this court. *State ex rel. Gray v. Webster* (1922), 122 Wash. 526, 211 Pac. 274. There being no right of appeal, we must perforce dismiss the attempted appeal.

To say that there is no appeal from the juvenile court does not mean that its orders and judgments are not subject to review and its errors may not be corrected, certiorari and prohibition having been utilized for that purpose on numerous occasions.

For instances of review on application for writs of prohibition, see *State ex rel. De Bit v. Superior Court* (1918), 103 Wash. 183, 173 Pac. 1014; *State ex rel. Mead v. Superior Court* (1919), 108 Wash. 636, 185 Pac. 628; *In re Hudson* (1942), 13 Wn. (2d) 673, 126 P. (2d) 765.

For instances of review by writs of certiorari, see *State ex rel Raddue v. Superior Court* (1919), 106 Wash. 619, 180 Pac. 875; *State ex rel. Berry v. Superior Court* (1926), 139 Wash. 1, 245 Pac. 409, 45 A. L. R. 1530; *State ex rel. Helwig v. Superior Court* (1934), 176 Wash. 478, 29 P. (2d) 930; *State ex rel. Everitt v. Superior Court* (1934), 178 Wash. 90, 33 P. (2d) 897; *In re Day* (1937), 189 Wash. 368, 65 P. (2d)

1049; *State ex rel. Cummings v. Kinne* (1941), 8 Wn. (2d) 1, 111 P. (2d) 222; *In re Williams* (1941), 10 Wn. (2d) 542, 117 P. (2d) 202; *State ex rel. Pulakis v. Superior Court* (1942), 14 Wn. (2d) 507, 128 P. (2d) 649; *Sumner v. Superior Court* (1943), 19 Wn. (2d) 5, 140 P. (2d) 784; *State ex rel. Smith v. Superior Court* (1945), 23 Wn. (2d) 357, 161 P. (2d) 188; *State ex rel. Towne v. Superior Court* (1946), 24 Wn. (2d) 441, 165 P. (2d) 862; *State ex rel. Haugland v. Smythe* (1946), 25 Wn. (2d) 161, 169 P. (2d) 706, 165 A. L. R. 1295.

(It must be conceded, with some embarrassment, that we did entertain and dispose of an appeal from a custody order of a juvenile court in *Fuhrman v. Arvin* (1944), 21 Wn. (2d) 828, 153 P. (2d) 165, the question of the right to an appeal from such an order not having been brought to our attention. There are also cases, such as *State ex rel. Gilroy v. Superior Court* (1951), 37 Wn. (2d) 926, 226 P. (2d) 882, in which the aggrieved party, being doubtful whether to proceed by certiorari or appeal, has done both. Despite any inferences to the contrary, our right to review the action of the juvenile court in such a case is based upon the application for a writ of certiorari and not upon an appeal.)

Where children have been adjudged dependent and were under the control of the juvenile court, applications for writs of *habeas corpus* have been treated as applications for change of custody. *State ex rel. De Bit v. Mackintosh* (1917), 98 Wash. 438, 167 Pac. 1090; *In re Chartrand* (1919), 107 Wash. 560, 182 Pac. 610; *In re Gordon* (1943), 19 Wn. (2d) 714, 144 P. (2d) 238; *Jones v. Crompton, post* p. 961, 235 P. (2d) 825. And the dismissal of an application for a writ of *habeas corpus* is, of course, subject to review by appeal. *In re Day* (1937), 189 Wash. 368, 65 P. (2d) 1049; *State ex rel. Cummings v. Kinne* (1941), 8 Wn. (2d) 1, 111 P. (2d) 222. In the *Cummings* case, a writ of certiorari to review the order of the juvenile court was properly consolidated with an appeal from an order discharging a writ of *habeas corpus*.

It appearing to the court that Mr. Wade had no right to appeal from the order of the juvenile court complained of, the attempted appeal is dismissed.

·ALL CONCUR.

