[No. 6150. Decided July 23, 1906.]

The State of Washington, on the Relation of Stanley C. Le Brook, Appellant, v. Perry Wheeler et al., Respondents.[1]

Adoption—Consent of Parents. Where, in proceedings for the adoption of a minor child, no guardian was appointed, the consent by both parents must appear, as required by Bal. Code, § 6480.

Parent and Child—Abandonment. A parent does not abandon his infant child by leaving it for five or six months in the care of his mother without communicating with her, while seeking employment.

Parent and Child—Infants—Proceedings to Commit to Charitable Society—Complaint. Under Laws 1903, p. 60, in order to authorize a charitable society to have the exclusive possession of a child it must be alleged that both of its parents have abandoned the child or are unfit, etc., to have its custody.

Same—Notice to Parent—Judgment—Jurisdiction. The statute requiring notice of at least five days to be given to the parents of application to award the custody of a child to a charitable society,

1Reported in 86 Pac. 394.

the proceedings and order are void for want of jurisdiction where the order was made on application of the mother alleging that the father had abandoned the child, notice was then given to the mother, who accepted service, and the hearing was thereupon had and order made immediately without any notice to the father.

SAME—SURRENDER—NOTICE. Laws 1903, p. 59, § 1, authorizing the surrender of a child by the mother in case of legal incapacity or abandonment by the child's father, could not deprive the father of his right to the child's custody without an adjudication by a court of competent jurisdiction as to his unfitness or abandonment, and without giving him his day in court.

SAME—JUDGMENTS—RECITALS AS TO SERVICE—JURISDICTION—COLLATERAL ATTACK. An order awarding the custody of a child to a charitable society, reciting due service of notice, can be collaterally attacked for want of service, where it appears conclusively that no service was made, in that the law required at least five days notice, and the order was made immediately upon making the application.

ADOPTION—CONSENT OF CHARITABLE INSTITUTION—VALIDITY. Proceedings for the adoption of a child held by and upon the consent of a charitable institution, as authorized by Laws 1903, p. 59, § 1, are void as against the parents, where the institution had no right to the custody of the child.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered February 19, 1906, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, denying the application of a father for a writ of habeas corpus to recover the custody of a child. Reversed.

*Maurice A. Langhorne,* for appellant.

*J. R. Buxton,* for respondents.

Crow, J.—In January, 1902, the relator, Stanley C. Le Brook, married one Florence E. Thornton. As issue of said marriage one daughter, Sherley May Le Brook, was born in December, 1902. In January, 1904, Stanley C. Le Brook discovered that his wife was sustaining criminal relations with one Peter St. Louis; whereupon he left her, and taking said child, placed her with relator's mother, one Mattie Passig, at Everett, Washington. The relator and his child con-

tinued to live with Mrs. Passig until July 10, 1904, when, leaving said child with his mother to be cared for, he went to Granite Falls to seek employment. The record fails to show that, from the time relator took possession of said child in January, 1904, until he left Everett, his wife, Florence E. Le Brook, ever sought the possession of said child, or evinced any interest in its welfare. About three weeks after the departure of relator, Florence E. Le Brook took possession of said child during the illness of Mrs. Passig, and on August 1, 1905, filed in the superior court of Snohomish county a complaint, purporting to be drawn under § 2 of chapter 49 of the Laws of 1903, page 58, wherein she alleged that said child, Sherley May Le Brook, was without proper parental care; that its father, Stanley C. Le Brook, had failed to support his wife and family; that his then present residence was unknown; that she as the mother of said child was unable to provide it with proper support; that said child had no permanent home, nor had it any legal guardian except herself; that the whereabouts of its next of kin was unknown, and that the welfare of said child required that legal steps be taken to forthwith provide for its care and custody. The petition prayed that five days' notice be given to the next of kin, and that the child be committed to the custody of the Washington Children's Home Society, a benevolent and charitable society incorporated under the laws of Washington.

Upon the filing of this complaint, the judge of said court ordered that it be heard on said August 1, 1904; that notice of the time and place of such hearing be personally served upon said Mrs. Florence E. Le Brook, or the next of kin of said child, if personal service could be made; and that, if personal service could not be made, then the county commissioners cause notice to be published to the next of kin at least five days before said hearing. Immediately upon the signing of said order, said Florence E. Le Brook, mother of said child, indorsed thereon an admission of service, and con-

sented to said hearing. The record fails to show any service or attempt at service on the relator, Stanley C. Le Brook, as father of said child, or on his mother Mattie Passig, as next of kin. Immediately thereafter, upon August 1, 1904, said court made the following order:

"This cause having come on to be heard August 1, 1904, upon the complaint of Mrs. F. E. Le Brook, it appearing that notice of time and place of the hearing of said complaint was duly given to the person legally entitled to the same, as prescribed by law, said person appearing, said cause having been duly heard and the court being fully advised in the premises: It is hereby ordered that said minor child, Sherley May Le Brook, be and she hereby is committed to the care and custody of the Washington Children's Home Society to care for and educate such child, or place her temporarily or permanently in a suitable private home, in such manner as shall best secure her welfare, and that said society be, and the same hereby is, authorized otherwise to care for and control said child as is provided by law."

Afterwards, on August 9, 1904, said Florence E. Le Brook, as mother of said child, attempted to surrender it to said Washington Children's Home Society, under the provisions of subdivision b, § 1, of chapter 49, Laws 1903, p. 58; but the instrument executed by her failed to recite the death or incapacity of the father of said child, or that he had abandoned or neglected to provide for his family. Said Washington Children's Home Society took charge of said child and shortly thereafter placed it in the care of one Mrs. Topper, in Lewis county, who, two or three weeks later, placed it in the custody and control of Perry Wheeler and Jennie Wheeler, his wife, the respondents herein, who retained it for some eighteen months prior to the adoption proceedings hereinafter mentioned. The relator, Stanley C. Le Brook, remained away from Everett for some five or six months without communicating with his mother, who in the meantime had unsuccessfully endeavored to learn the whereabouts

of said child. On the relator's return, he endeavored to find said child, but was unable to do so.

In 1905 the relator commenced, in the superior court of Lewis county, an action to secure a divorce from his wife, Florence E. Le Brook, and upon personal service and her default, obtained a decree on November 16, 1905. In his complaint he alleged that his wife, Florence E. Le Brook, had concealed said child somewhere in the state of Washington, he being unable to state where, and asked for its custody. The decree of divorce provided that, as between the parties to said action, the custody and control of said child be awarded to said Stanley C. Le Brook. Afterwards, on December 28, 1905, respondents Perry Wheeler and Jennie Wheeler, his wife, filed in the superior court of Lewis county a petition for the adoption of said child, then about three years of age, and asked that her name be changed to Sherley Ruth Wheeler. On the same day H. D. Brown, as state superintendent of the Washington Children's Home Society, filed in said adoption proceedings the written consent of said society to such adoption, and relinquished all claims of said society to said child. On the same day the judge of said superior court made findings that the Washington Children's Home Society had had the legal custody and possession of said Sherley May Le Brook, for more than one year; that it had consented in writing to its adoption by said petitioners; that its mother had surrendered it to said society on August 9, 1904; that the petitioners were proper persons to adopt, rear, and educate said child, and thereupon ordered that it should become to all intents and purposes the child of said Perry Wheeler and Jennie Wheeler, and that its name be changed to Sherley Ruth Wheeler. No finding was made that any written consent was given to such adoption by the parents of said child, nor that either of its parents was hopelessly insane or a confirmed drunkard, or that they had abandoned said child, nor was any suitable guardian appointed for said child in such proceeding.

Immediately after said adoption proceedings, the relator heard of the same, and thereby learned of the location of his child. He immediately demanded its surrender, which being refused, he thereupon instituted this proceeding, asking for a writ of *habeas corpus*. Respondents pleaded the order of the superior court of Snohomish county, the surrender of said child by its mother, and said adoption proceedings. To this answer a reply was made by the relator, in which he affirmatively alleges that all of said proceedings surrendering said child to the Washington Children's Home Society are absolutely void, for the reason that no citation or notice or process of any kind whatever had been served or attempted to be served on him, either personally or by publication, or otherwise; that said adoption proceedings are also void, and that he had not abandoned said child, but had provided a suitable home for it with his mother. On trial, findings of fact were made as requested by respondents, and findings submitted by the relator were refused. The evidence, however, shows the facts as above stated. The trial court entered a judgment in favor of respondents, awarding to them the custody of said child, and the relator has appealed.

Numerous assignments of error have been discussed, but they are all involved in two questions: (1) Were the proceedings by which said child was surrendered to the Washington Children's Home Society sufficient in law to deprive the relator of his rights as father? (2) were the adoption proceedings valid and sufficient in law to confer upon respondents the right to the possession of said child, to the exclusion of its natural father?

As between Stanley C. Le Brook and Florence E. Le Brook, his former wife, the relator is entitled to the exclusive custody and control of said child by virtue of the decree in the divorce proceedings above mentioned, which was entered prior to the alleged adoption of said child. Respondents contend that the relator had in fact abondoned his child when he left the city of Everett and remained away five or six months

without communicating with his mother. We think no abandonment has been shown. He left the child with his mother, who was caring for it.

"To constitute such an abandonment by a parent as will deprive him of the right to prevent the adoption of his child, there must be some conduct on his part which evinces a settled purpose to forego all parental duties. But merely permitting the child to remain for a time undisturbed in the care of others is not such an abandonment." 1 Cyc. 922, (b).

Although some effort has been made to show that Mrs. Passig was not a suitable person to have said child, such effort has resulted in failure. Florence E. Le Brook, the mother, had not interfered with its possession for six months after it was taken from her by the father. In fact, her only act with reference to said child was to take possession of it within a few days after the departure of its father, while his mother was ill, and to surrender it to the Washington Children's Home Society. Her actions indicate that her only motive was to do all she could to deprive the relator of the custody of his child without attempting to secure its custody for herself. By reason of her improper conduct, she doubtless believed she would be unable to secure and hold the child herself and she did what she could to prevent her husband from retaining its care, custody and control. The adoption proceedings were had under the provisions of Bal. Code, §§ 6480-6483 (P. C. § 2801-2804). As no guardian was appointed, it became necessary, under § 6480, for the parents to consent to such adoption. The record shows, however, that the Washington Children's Home Society claimed the possession of said child under §§ 1 and 2, of the act of 1903, chapter 49, above mentioned. If it was legally entitled to such possession, then by the provisions of subd. d of § 1, it had authority to surrender said child and to consent to its adoption, said act having been passed subsequent to § 6480 Bal. Code, and its consent made it unnecessary for the parents to consent, they having lost their right to the care, custody and

control. The appellant contends that the society did not consent, and that the instrument signed by H. D. Brown, as its superintendent, was not authorized. In view of the position we take as to the rights of the society, this question becomes immaterial. We will therefore assume, for the purposes of this opinion, that the society did make such consent by H. D. Brown, its authorized agent.

By reason of the views above expressed, it follows that, if such society was legally entitled to the exclusive custody and control of said child, said adoption proceedings were valid; otherwise they were void. The alleged right of the Washington Children's Home Society to the exclusive custody of said child is based upon: (1) The order of the superior court of Snohomish county, and (2) its surrender by Florence E. Le Brook, its mother. It is claimed that the order of the superior court of Snohomish county was authorized by, and obtained under, the provisions of § 2 of the act of 1903, page 58, which reads as follows:

"Upon complaint of any person in writing . . . alleging that the father of such minor child is dead, or has abandoned his family or is an habitual drunkard or is a man of notoriously bad character, or is imprisoned for crime, or has grossly abused or neglected such child, *and* that the mother of such child is an habitual drunkard, or imprisoned for crime, or an inmate of a house of ill-fame, or a woman of notoriously bad character, or is dead, or has abandoned her family, or has grossly abused or negelected such child, . . . a warrant shall issue directing the proper officer to take such child into custody and care for or dispose of it as such judge shall direct, until a hearing can be had, such proceedings shall have precedence of other causes, of which hearing not less than five days' notice shall be given to such parents, guardian or next of kin, . . ."

An examination of this section will show that, before the order contemplated therein can be made, two conditions must exist; (1) that the child has been abandoned by its father, or that he is an improper or unfit person to retain its

custody and control, *and* (2) that the mother of said child is an habitual drunkard, or an improper person to have its custody and control, or has abandoned said child. The complaint alleges that the father had abandoned said child, but makes no allegations whatever against the mother; in fact, she herself was the petitioner. The allegations of the complaint, therefore, were directed against the father only; still no notice was given to him, nor was any attempted. The court directed that five days' notice should be given, not to the father, but to the mother, the petitioner, or the next of kin; and without the giving of such notice, at once proceeded, on the filing of the petition to hear the cause, and awarded the custody of the child to the society. In other words, the mother, as the petitioner, alleged that the father had abandoned the child, filed her complaint, confessed service, admitted all the allegations of the complaint, and the court immediately found that the child had been abandoned by its father, and awarded its custody to the society.

Respondents now contend that this order destroyed all of the father's rights, and that he cannot question the same in this collateral proceeding. This contention cannot be sustained. In order that the father might be bound by said order, it was necessary that some character of service should be made upon him, and that he should have his day in court. The statute provides that notice of the hearing shall be given to the parents, indicating both parents. The character of this notice is not prescribed, nor is the duration thereof fixed, save that the minimum limit shall be five days. The court would necessarily be authorized to make such an order as in its discretion would be reasonable, directing how notice should be given. It should, if practicable, be personal; otherwise it might be constructive. It should allow the parties to whom it is directed such reasonable time for appearance as would be fair and just under all surrounding circumstances, but in no event could such time be fixed at less than

five days. It is the evident purpose of the statute that parents shall not be deprived of the custody of their children without such notice as will afford them a fair and reasonable opportunity to be heard, and to contest the charges made against them. In *Windsor v. McVeigh*, 93 U. S. 274, 23 L. Ed. 914, Mr. Justice Field says:

"Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal."

At no time prior to this proceeding did the relator have any opportunity for showing that he had not abandoned the child, or that he was not an unfit person to retain its custody and control. This fact affirmatively appears on the face of the record itself. The order of commitment was therefore void as against the relator, and was not entitled to be considered by the superior court of Lewis county in the adoption proceedings.

The second claim of the society to the custody of the child is based upon the surrender made by the mother, which was attempted under subdivision b of § 1, of said chapter 49, Laws 1903, p. 58. This subdivision provides that "in case of death or legal incapacity of a father or his abandonment or neglect to provide for his family, the mother shall have authority to make such surrender." If the legislature of this state by said section intended to deprive the father of all right or dominion over his child without an opportunity to be heard, then the statute could not be sustained. No father can be deprived of his child without an adjudication by a court of competent jurisdiction that he has abandoned or deserted it, or is unfit to have its custody and control. The rights of a father to the services, control, and custody of

his minor children cannot be taken away in any other manner than by the solemn judgment of a court of competent jurisdiction. The instrument by which the mother undertook to surrender the child did not even allege the death or legal incapacity of the father, or his abandonment of or neglect to provide for his family. In making this attempted surrender it is evident that the mother was relying upon the previous adjudication of the superior court of Snohomish county to show an abandonment of said child by its father. Said adjudication, however, was made upon her own allegations and admissions, without any opportunity upon the part of the father to be heard, without any service or attempted service upon him, and without giving him any day in court, and was void.

The respondents contend that the order of the superior court of Snohomish county cannot be attacked or questioned in this collateral proceeding, because it recites a proper service. This would be true if it did not clearly and affirmatively appear from the record itself that no service was made; that the petition was heard on the same day on which it was filed before the minimum period of five days for service had expired, upon an admission of service made only by the mother, who was the petitioner; and that no sufficient time for any valid service on the father had elapsed. It is not claimed that the relator was in fact served. The undisputed evidence in this action shows that he was not. This being true, the entire proceeding was void. If such a proceeding could be upheld, then any wife who had been guilty of wrongful acts toward her husband to such an extent that he could not longer live with her, could, on securing possession of their child, without his consent and without his knowing where the child was, by her own allegations and admissions and by her own attempted surrender, turn said child over to some charitable institution and deprive him of all of his rights without an opportunity to be heard, when in fact

he had neither abandoned the child nor been guilty of any wrong. Such a proceeding cannot be permitted. There is nothing in this record to show any improper act or attempted wrong upon the part of the Washington Children's Home Society, or upon the part of the respondents Perry Wheeler and Jennie Wheeler, his wife. All wrongs here involved must be attributed to the former wife of the relator. The motives actuating the Washington Children's Home Society were proper and charitable, and the record discloses that the respondents are excellent citizens and proper persons to have retained the custody of said child. We are compelled to hold, however, that the adoption proceedings were invalid, for the reason that, at the time the Washington Children's Home Society consented to the same, and surrendered such child, it was not shown to have been legally entitled to its custody or control.

It is ordered that the judgment of the superior court be reversed, and that the custody of the said child, Sherley May Le Brook, be awarded to its father, Stanley C. Le Brook.

MOUNT, C. J., DUNBAR, HADLEY, and RUDKIN, JJ., concur.

ROOT, J., took no part.