[No. 9692. Department One. December 20, 1911.]

MABEL J. MORIN, *Respondent*, v. SAUL J. MORIN, *Appellant.*[1]

DIVORCE—CUSTODY OF CHILD—MODIFICATION OF DECREE—EVIDENCE —SUFFICIENCY. A judgment of divorce on the ground of cruelty of the husband, awarding the custody of a child, eight years old, to grandparents, with whom the wife was residing, should be modified so as to give the husband custody of the child where, nine months after the decree, the wife was adjudged insane and sent to an asylum, and the evidence shows that the husband had a suitable home and family and was in every way a proper person to have the custody of the child.

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered March 11, 1911, denying an application to modify a decree of divorce as to the custody of a child, after a hearing on the merits before the court without a jury. Reversed.

*Kerr & McCord* and *W. L. Read*, for appellant.

*Jas. W. Carr*, for respondent.

PARKER, J.—This is a controversy over the custody of a child, now about eight years old. The defendant, the father of the child, has appealed to this court from an order of the superior court for Kitsap county denying his petition for the modification of the decree rendered by that court May 20, 1910, in this case, divorcing the plaintiff from him, in

[1]Reported in 119 Pac. 745.

so far as that decree deprived him of the custody of this child.

The only portions of the divorce decree brought here by this record relate to the monthly allowance for support of the plaintiff and the child, and to the custody of the child. It is apparent, however, from other parts of the record before us, that the divorce was granted upon the ground of the cruelty of the defendant to the plaintiff. By the terms of the decree, the child was to remain the ward of the court until further order, and the court then placed it in the temporary custody of its grandparents, the father and mother of the plaintiff. This was done evidently upon the theory that the father was not a proper person to care for the child because of his acts of cruelty to the mother, and that the mother was not a proper person to have the custody of the child because of her then weakened mental condition. The placing of the child in the custody of the grandparents did not deprive the mother of its society, since she was then, and expected to continue, living with the grandparents, to whom the support money, both for her and the child, was by the decree directed to be paid. The decree gave the defendant the right to visit the child, and to have the child visit him at reasonable times.

Thereafter, in July, 1910, the plaintiff was adjudged insane by the superior court for Kitsap county, and committed to the Western Washington hospital for the insane, at Steilacoom. Thereafter plaintiff filed his petition for the custody of the child, and to be relieved from paying to the grandparents the allowance for its and the mother's support. The court then appointed James W. Carr, as guardian *ad litem*, to represent the plaintiff upon the hearing of the petition, and thereupon an answer to the petition was filed by him. On March 9, 1911, over nine months after the rendering of the original decree denying the defendant the custody of the child, the issues thus made came on for trial. We note the length of this period between the granting of the original

decree and this hearing, because it is upon the conditions existing during this period that the right of the defendant to the child largely depends. That is, he must show such changed conditions, and meritorious qualifications on his part, after the date of the decree, to properly care for the child, as will overcome the presumption against him to the contrary from the decree at the time of its rendition.

The evidence produced upon the hearing has all been brought here by statement of facts, and from it the following appears: The defendant has a good home in a good residence district in the city of Seattle. This home consists of a well equipped residence which, with the grounds and his shop on the back part thereof, is worth from $12,000 to $15,000, and is within a short distance of a public school. He has lived in this home for many years. It represents the accumulation of his frugality and industry as a mechanic and a manufacturer, in a small way, of a saw filing and setting device which is his own invention. His wife lived at this home with him until the separation, when she went to the home of her parents, in Kitsap county, and soon thereafter commenced this action for divorce. After the separation, he had a middle aged woman at his home as housekeeper, who as such took care of his home for about six months. This woman testified to his good behavior and kindly disposition, especially to his kindly treatment of his child, it being there to visit the father for several days at one time during that period. She also testified that he was a liberal and good provider for the home. This housekeeper ceased to work for the defendant upon his niece coming to live with him, which was about the last of August, 1910. Thereupon his niece became his housekeeper and has remained such ever since. She is a young woman about 20 years old. She is the oldest of a family of several children, and has had considerable experience in assisting in the care and rearing of her younger brothers and sisters. It is very evident from the testimony of her neighbors, who are well

acquainted with her, that she is a very competent house-
keeper and would be a suitable person to assist in the care
of the child.    The arrangement between her and the defend-
ant seems to contemplate that she stay with him indefinitely.
A nephew of the defendant also lives with him.    These three
live together as a family.    This niece testifies that the de-
fendant is of kindly disposition, and that he provides well
for his home.    Also that he spends his time at his home
when not at his work.    Two other women who live near the
defendant, and who are evidently quite well acquainted with
him and his niece, testify to his kindly disposition toward the
members of his family, and also to the competency of his
niece as a housekeeper and one suited to assist in the care
of his child.    Three men who are well acquainted with the
defendant and with his habits generally, though not knowing
much of his home life, testify that he is industrious and tem-
perate, and of good reputation.

All of this testimony touching the habits, disposition, and
mode of life of the defendant, relate to his conduct since the
granting of the decree of divorce, when he was deprived of
the custody of his child.    It is plain from the whole testi-
mony that he loves his child very much, and that the child
has an equal affection for him.    At the time of the hearing,
the mother was still in the hospital for the insane and the
child in the custody of its grandparents.    During the taking
of the testimony upon this hearing, counsel for the defendant
attempted to show the suitableness of the defendant to have
the custody of his child, by showing his disposition and mode
of life as it existed prior to the granting of the divorce; but,
upon objection of the guardian *ad litem* for the plaintiff, the
court declined to receive evidence so showing.    There was no
competent evidence offered in contradiction of these wit-
nesses.

In order, then, to determine the defendant's right to the
child at this time, we have the changed condition of the
plaintiff, who is no longer in a condition that she can pos-

sibly have the comfort and society of her child, and the undisputed evidence of these witnesses, which, standing alone, clearly shows the fitness of the defendant to have the care and custody of his child. Were it not for the presumption arising against him from the decree of the divorce, in effect adjudging that he was not at that time a suitable person to have the custody of the child, there would now seem to be no question whatever as to his rights in that regard. It is not an easy matter to measure the weight of the presumption against the defendant as to his fitness to have the care of his child, arising from the decree adjudging him to be unfit at the time of its rendition. Of course that is not a presumption which he could overcome by good conduct on his part for a short period of time following the entry of the decree, but it seems to us that his good conduct of the nature so clearly shown by this evidence, covering a continuous period of nine months following the entry of that decree, is sufficient to overcome the presumption arising against him from the decree at this time, giving to that decree every presumption it is entitled to as establishing his unfitness at the time of its rendition. We are not advised of the nature of the defendant's shortcomings at and prior to that time. At the instance of the guardian *ad litem*, the court closed the door to inquiry by defendant's counsel upon that question. Under such circumstances, we are not justified in presuming that plaintiff's faults were so serious that they have not become cured by this nine months of good conduct; at least, sufficiently to call for a modification of the decree in that particular.

The guardian *ad litem* seems to wage this contest, in some degree at least, upon the theory that these grandparents have some right to the custody of this child. This is wholly untenable. They were only given the custody of the child as the agent of the court, and even then only temporarily, with the full knowledge that the child might be taken from them at any time. The legal right of the father to the

custody of this child, since the mother is insane, and therefore cannot enjoy its society, is beyond question unless the father is clearly unfit to have its custody. As was said in *In re Neff*, 20 Wash. 652, 56 Pac. 383:

"He has the natural and legal right to the custody and control of the children, unless so completely unfit for such duties that the welfare of the children themselves imperatively demanded another disposition of their custody."

In this case the grandparents have the custody of the child by authority of the order of the court, not because of any inherent right they possess to have such custody. *Lovell v. House of the Good Shepherd*, 9 Wash. 419, 37 Pac. 660, 43 Am. St. 839; *Carey v. Hertel*, 37 Wash. 27, 79 Pac. 482. Of course it cannot be seriously contended that this is not an open question. It would be so even though the decree of divorce had not disposed of the child temporarily. The possibility of changed conditions after such a decree necessarily leaves the custody of children an open question.

No one can read the testimony in this record relating to the habits and disposition of this defendant during the nine months following the rendition of the divorce decree depriving him of the custody of this child without concluding that he is suitable in every way to have its custody and rearing, unless it can be said such showing is overcome by the presumptions against him arising from the decree holding that then he was not suitable to have the child's custody. We think that this showing so clearly overcomes that presumption that the learned trial court was in error in declining to modify the decree as prayed for. We do not mean a modification now made in conformity with these views shall close the question of his suitableness to have the custody of the child any more than the decree of divorce closed the question as against him. Should the wife become cured of her present affliction so that it becomes practical for her to enjoy the society of the child it may be that her rights will then call for another change. Or should the defendant become un-

suitable, that may also call for another change.   But as con-
ditions existed at the time of this hearing with no one having
an inherent legal right to the child other than defendant,
and his suitableness therefor being shown as we have indi-
cated, we are of the opinion that he should be awarded the
custody of the child subject to such changes as subsequent
events may dictate.   The order of the learned trial court
is reversed, with directions to proceed in conformity with
this opinion.   The defendant will be relieved of the burden
of paying allowance to the grandparents except for the
period the child remains in their custody.   In view of the
circumstances of this case the defendant will recover no
costs upon this appeal and will pay to the guardian *ad litem*
the costs incurred by him upon this appeal including an
attorney's fee of $50.

DUNBAR, C. J., MOUNT, FULLERTON, and GOSE, JJ., con-
cur.