[No. 31749. Department Two. January 17, 1952.]

*In the Matter of the Application of* WILLIS WARD *et al., for a Writ of Habeas Corpus.*[1]

*Crippen & Flynn,* for appellants.

*Copeland & Tollefson,* for respondent.

SCHWELLENBACH, C. J.—This is an appeal from an order of the superior court for Pierce county, granting a writ of *habeas corpus* to respondents, the parents of the child, whose custody they sought to recover from appellants, the paternal grandmother and step-grandfather.

[1]Reported in 239 P. (2d) 560.

February 6, 1944, Dorothy Ward, who then lived in Forest Grove, Oregon, and whose husband was in the service, brought the boy to Tacoma and gave him to her husband's mother for keeping. She was going to visit her husband before he went overseas. The boy was then four months old. From then until the hearing (when the boy was seven years of age) the grandmother and her husband raised and cared for the child. During this period the parents did not contribute anything towards its support and for a period of four or five years prior to the hearing, had not communicated with the grandmother. After the father informed his mother that he and his wife were coming from California to take the child, the grandmother and her husband commenced adoption proceedings. Upon arrival here the parents sought the writ of *habeas corpus*.

Both parents came to see the child when he was eight or nine months old. There is a dispute in the testimony as to whether or not anything was then said about taking him home.

In February, 1946, the father, who had recently returned from the service, came to see the baby in response to a telegram that he was sick. At that time, there was some discussion between the father and the grandmother about taking the boy back, but no definite time was set. She told him that she wanted to go with the boy, rent a room and stay with him, and leave him with his parents a little longer each day until he became acquainted with his father. The boy's father did not agree to this because there was a very serious disagreement between his wife and his mother. He decided that it was the better part of valor not to precipitate further disagreement between them. Nothing more was done for four years, the parents having moved to California. The father admitted that, during the four year period, he did not write and inquire about the health and welfare of his child. He gave as his reason that he knew the child was well.

Each case involving the rights to the custody of minor children must be decided on its own peculiar facts.

In such cases, we have held that the future welfare of the child is the paramount consideration of the courts, and that a parent is primarily entitled to its care, provided that he is a suitable person to be charged therewith. *Carey v. Hertel*, 37 Wash. 27, 79 Pac. 482. In the case of *In re Neff*, 20 Wash. 652, 56 Pac. 383, we said:

"There should not be any arbitrary rule that will deprive the parent of the custody and society of the children. . . . He has the natural and legal right to the custody and control of the children, unless so completely unfit for such duties that the welfare of the children themselves imperatively demanded another disposition of their custody."

We held in *Morin v. Morin*, 66 Wash. 312, 119 Pac. 745 that, as between the father and the grandparents, the grandparents had no natural or inherent right to the custody of the child in question. See also *In re Stuart*, 138 Wash. 59, 244 Pac. 116.

Appellants contend that the parents abandoned the child and that the trial court erred in not so holding.

This court has not defined abandonment of children, but has decided from the facts in each case whether or not there has been an abandonment.

*State ex rel. Le Brook v. Wheeler*, 43 Wash. 183, 86 Pac. 394, was a *habeas corpus* proceeding brought by a father for the custody of his child. He found that his wife was sustaining criminal relations with other men and left her, taking the child with him. He placed the child in the care of his mother, who resided in Everett. Later he left for Granite Falls where he obtained employment. He remained away for five or six months without writing to his mother. In the meantime his wife took the child from his mother, who was ill, and it eventually was placed with the Wheelers, who adopted it. In granting the writ, this court said:

"Respondents contend that the relator had in fact abandoned his child when he left the city of Everett and remained away five or six months without communicating with his mother. We think no abandonment has been shown. He left the child with his mother, who was caring for it."

Without detailing any of the facts we quote from *Penney v. Penney*, 151 Wash. 328, 275 Pac. 710.

"It very clearly appears that the mother has entirely abandoned the child, has not even seen her for four or five years and apparently has lost all interest in her. . . .

"But it is said that the father, by his long absence in Canada, his silence for a considerable time and his failure to make earlier and more effective efforts to regain the custody of the child, has forfeited his rights. *Paternal or maternal rights will not be held to have been abandoned except upon a plain showing to that effect, and that the acts are without justifiable excuse.*" (Italics ours.)

*In re Fields*, 56 Wash. 259, 105 Pac. 466, was a *habeas corpus* proceeding by a mother for the custody of her illegitimate child. Subsequent to its birth she had taken the child to a foundling home where she had left it for adoption. We there said:

"From a careful investigation of all the testimony in this case, and recognizing the pitiful condition of the mother, that she was grievously sinned against, and that the fault, if fault there was, was caused by inexperience on her part and by villainous wiles on the part of her seducer, we are forced to the conviction that the fact was that the intention of the appellant when she took the child to the hospital was to abandon it, in the sense of relinquishing all claims that she had upon it, so that it might be legally disposed of by the authorities of the hospital."

In the present case, although we have no hesitancy in saying that the parents were extremely neglectful of their child, we cannot hold that, when the mother took the baby to its grandmother it was her intention to abandon it in the sense of relinquishing all claims to it which she and her husband had. It was a temporary arrangement. The grandmother recognized this status because, when the child's father visited her upon his return from the service, she and he discussed the return of the boy to his parents. We do not condone his subsequent neglect. However, he was right in the middle of a bitter quarrel between his wife and his mother. He apparently had no fear as to the care which was being given to the child. Prior to being served

'with notice of adoption proceedings, he had called his mother and had notified her that they were coming for the child. We are convinced from the record that respondents had no intention of abandoning the child to its grandmother and her husband, nor do their actions constitute abandonment.

The order appealed from is affirmed.

HILL, HAMLEY, FINLEY, and OLSON, JJ., concur.