[No. 42585.   En Banc.   August 30, 1973.]

*In the Matter of the Welfare of* JOHNNY LEE SEGO *et al., Minors.*

*Ronnie L. Sego,* pro se, and *John H. Ward,* for respondent.

*Earl F. Angevine, Prosecuting Attorney,* and *Gilbert E. Mullen, Chief Deputy,* for petitioner.

STAFFORD, J.—Ronnie L. Sego was permanently deprived of the custody of his two children by the juvenile court. The Court of Appeals reversed and remanded the case with

directions to take additional evidence on the subject of permanent deprivation.

■ This matter has come before us on a petition for review. Thus, we shall limit our discussion to issues raised therein. *Wood v. Postelthwaite,* 82 Wn.2d 387, 510 P.2d 1109 (1973). By so limiting ourselves to the specific issues before us we do not, by inference, pass upon other matters resolved by the Court of Appeals.

The basic issues are: (1) the standard of proof required to support an order *permanently depriving* a natural parent of his minor children; and (2) whether there is substantial evidence to support the trial court's order of permanent deprivation.

■ From an early date we have recognized that courts undertake a grave responsibility when they deprive parents of the care, custody and control of their natural children. *Lovell v. House of the Good Shepherd,* 9 Wash. 419, 37 P. 660 (1894). Such parental rights should be permanently abridged only when demanded by the circumstances of each case (*In re Neff,* 20 Wash. 652, 56 P. 383 (1899)) or, as stated in *In re Day,* 189 Wash. 368, 65 P.2d 1049 (1937), only "for the most powerful reasons". On the other hand, we have ruled that a child's welfare is the court's primary consideration. Consequently, when the rights of parents and the welfare of their children are in conflict, the welfare of the minor children must prevail. *In re Day, supra.*

It is with the welfare of the children in mind that the rights of the parents are examined. Before a natural parent can be permanently deprived of the right to care, custody and control of his minor children the facts supporting permanent deprivation must "clearly show that the welfare of the children will be substantially subserved by such action." *State ex rel. Cummings v. Kinne,* 8 Wn.2d 1, 111 P.2d 222 (1941). We have also referred to the proof necessary for permanent deprivation as that supported by "the most powerful reasons" (*In re Day, supra*), "imperatively demanded" (*In re Neff, supra*), and, a "plain showing" (*In re Ward,* 39 Wn.2d 894, 239 P.2d 560 (1952)).

■ The foregoing pronouncements of the quantum of proof required to support permanent deprivation may appear to lack consistency. Careful consideration reveals, however, that the court has indicated that more than a mere preponderance of the evidence is required to support a court order permanently depriving a parent of his minor children.

A synthesis of our cases, as well as some from other jurisdictions[1] convinces us of the logic that clear, cogent and convincing evidence is necessary to sustain an order permanently depriving a parent of the care, custody and control of his children. This is the equivalent of saying that the ultimate fact in issue must be shown by evidence to be "highly probable." *Supove v. Densmoor*, 225 Ore. 365, 358 P.2d 510 (1961); *see also State v. Blubaugh*, 80 Wn.2d 28, 491 P.2d 646 (1971).

■ We are firmly committed to the rule that a trial court's findings of fact will not be disturbed on appeal if they are supported by "substantial evidence". *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972). Nevertheless, evidence that may be sufficiently "substantial" to support an ultimate fact in issue based upon a "preponderance of the evidence"[2] may not be sufficient to support an ultimate fact in issue, proof of which must be established by clear, cogent and convincing evidence. *See In re Estate of Reilly*, 78 Wn.2d 623, 640, 479 P.2d 1 (1970). Thus, the question to be resolved is not merely whether there is "substantial evidence" to support the trial court's ultimate determination of the factual issue but whether there is "substantial evidence" to support such findings in light of the "highly probable" test.

■ As an appellate tribunal, we are not entitled to

---

[1] *In re Simmons Children*, 154 W. Va. 491, 177 S.E.2d 19 (1970); *Hollick v. McDaniel*, 401 P.2d 466 (Okla. 1965); and *In re Estate of Lindner*, 13 Cal. App. 208, 109 P. 101 (1910).

[2] Preponderance of the evidence means evidence that is more probably true than not true. *Presnell v. Safeway Stores, Inc.*, 60 Wn.2d 671, 374 P.2d 939 (1962).

weigh either the evidence or the credibility of witnesses even though we may disagree with the trial court in either regard. The trial court has the witnesses before it and is able to observe them and their demeanor upon the witness stand. It is more capable of resolving questions touching upon both weight and credibility than we are. *In re Palmer*, 81 Wn.2d 604, 606, 503 P.2d 464 (1972). Our duty, on review, is to determine whether there exists the necessary quantum of proof to support the trial court's findings of fact and order of permanent deprivation.

As noted initially, courts attempt to protect the rights of both parents and children, giving primary consideration to the welfare of children. It is necessary to consider each case on its own facts. *In re Palmer, supra*. For example, a parent's misconduct, even if criminal in nature, does not automatically support permanent child deprivation. By the same token, imprisonment, alone, does not necessarily justify an order of permanent deprivation. *In re Staat*, 287 Minn. 501, 178 N.W.2d 709 (1970). On the other hand, a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as are the parent's conduct prior to imprisonment and during the period of incarceration.

Considering the trial court's role and the proper role of appellate review, we are convinced that there is "substantial evidence" to support the trial court's order of permanent deprivation in this case. The requisite standard of proof has been met.

The record reveals that while in the service Mr. Sego developed a habit of excessive drinking which continued unabated after his honorable discharge in 1960. A history of marital discord ended tragically when Mr. Sego murdered his wife, the mother of his 2-year-old daughter and 9-month-old son who are the subjects of the deprivation order herein. Mr. Sego testified that while intoxicated he

would become emotionally upset and could not control himself. In that regard the juvenile court found that

during these drinking periods the father . . . evidenced a vicious, mean disposition, which culminated in the killing of the mother of said children.

(Finding of fact 3.)

After murdering his wife, Mr. Sego pleaded guilty to second-degree murder, armed robbery and escape. In March 1969, he was sentenced to concurrent prison terms, 25 years for each of the first two charges and 10 years for the third. Mr. Sego has been serving his sentences at the state penitentiary at Walla Walla.

After Mr. Sego was arrested for murdering the children's mother, the Clallam County Juvenile Court held an emergency hearing on January 9, 1969. Acting upon the assumption that the Sego children were "dependent" within the meaning of the juvenile court act, the court declared the children wards of the court and temporarily placed them in a foster home. After a hearing on January 24, 1969, at which Mr. Sego was represented by counsel, the juvenile court reaffirmed the children's dependent status and continued their foster home care. An additional hearing was held on April 25, 1969, at which Mr. Sego was again represented by counsel. At this time the Clallam County Juvenile Court reaffirmed the dependency and wardship status of the children and awarded their temporary custody to Mr. and Mrs. W. L. Johnson, a maternal aunt and uncle, who resided in Skagit County, Washington. Further, jurisdiction over the children was transferred to the Juvenile Department of the Skagit County Superior Court.

A December 3, 1970 report, prepared by Mr. Paradis of the Department of Social and Health Services, Division of Public Assistance, recommended that Mr. Sego be "permanently and totally deprived of all rights to care for said minors" and that the children be placed in an adoptive status.

On February 24, 1971, the Skagit County Juvenile Court's probation officer and Mr. Paradis filed a petition

asking the juvenile court to "consider permanent deprivation of these minor children from their father." Thereafter, a hearing was held at which the petitioners were represented by the Skagit County Prosecuting Attorney. Mr. Sego appeared in person and by his attorney. The Sego children appeared by an attorney appointed by the court as guardian ad litem, who filed a report with his recommendations. The Johnsons were not parties to the proceedings but appeared by their attorney, who participated through the guardian ad litem.

On October 26, 1971, the juvenile court entered findings, conclusions and an order permanently depriving Mr. Sego of the custody of his children and placing them in an adoptive status. On December 27, 1971, the court denied Mr. Sego's petition for visitation rights with his children pending review of the case by the Court of Appeals.

After a review of the record, the Court of Appeals concluded that the juvenile court's order of permanent deprivation was not supported by clear, cogent and convincing evidence. It reversed the order and remanded the case with directions to hold further proceedings to obtain additional evidence in order to remove any serious doubt concerning the propriety of the deprivation order.

The record indicates that while in prison Mr. Sego has taken advantage of available counseling and therapy services, has become active in Alcoholics Anonymous, has attended bible classes and has enrolled in a class to help qualify himself as a machinist. As a result, his sentences have been reduced 5 years which means that, if he becomes entitled to time off for good behavior, he may be released from prison in November 1980. In addition, he was scheduled for a progress hearing in April of 1972 which could result in an earlier release. Further, there was evidence that he might soon qualify for minimum security status which could, if granted, enable him to visit his children from time to time, outside the prison.

Concerning the foregoing, the trial court made finding of fact 5 as follows:

That while evidence was introduced, tending to indicate that Mr. Sego has a remarkable record in rehabilitation at the Department of Institutions, such apparent rehabilitation is against a background of the structured life at the penitentiary, where he has endured none of the responsibilities attendant his duties as a father and head of the household.

The juvenile court's order of permanent deprivation was predicated in part upon a finding that permanent deprivation is required "if permanent damage [to the children] is to be avoided." (Finding of fact 8.) The finding of fact rests partially upon expert testimony introduced on behalf of the petitioners seeking permanent deprivation. While there is testimony regarding Mr. Sego's progress in rehabilitation at the penitentiary, it does not obliterate the expert opinion that the children's welfare would be best served by immediate permanent deprivation.

Much of the Court of Appeals' opinion is concerned with the weight to be given to testimony of the various experts. It is possible, as the Court of Appeals has done, to diminish or enhance the weight to be attached to various evidentiary facts. As we said in *Hollingbery v. Dunn*, 68 Wn.2d 75, 82, 411 P.2d 431 (1966):

> This, however, is not our function on appellate review of the question presented. Our function begins and ends with ascertaining whether the challenged finding of fact, as entered by the trial court, is supported by substantial evidence and, if so, whether the findings as a whole sustain the challenged conclusion of Law.

In this regard, the Court of Appeals has quoted at length from a report of Dr. Kaufman, admitted by agreement of the parties. At first blush the report seems to indicate that the children should not be removed from Mr. Sego's custody and that he should be given an opportunity to provide a suitable home. However, another portion of the report states as follows:

> On the other hand, if we can in any way go by the factual information in the Public Assistance record that Mr. Sego's behavior even before the homicide was unsta-

ble, that his work record was inconsistent, there would be a question in my mind, in spite of the positive statements from Dr. Hunter of the penitentiary, that this man was capable of establishing a stable home for the children upon his release from the penitentiary.

This portion of the report provides further evidence to support the court's ultimate findings, obviously based upon disputed facts and conflicting expert opinion.

At the conclusion of the hearing the trial judge filed a memorandum decision stating in part: "This Court does not reach this decision easily nor with peace of mind." Thereafter the trial judge entered findings of fact, conclusions of law and an order permanently depriving Mr. Sego of the custody of his children. The Court of Appeals has treated the quoted statement as an expression of doubt depreciating the requisite clear, cogent and convincing determination. We do not so read the court's memorandum decision. We see therein no more than a judge's natural reluctance to make such a difficult decision. It is not an indication that the judge's decision, however reluctantly made, was reached on the basis of inadequate evidence or that the trial judge was in doubt as to the correct course of action required.

We conclude that there is substantial evidence to support the findings of the trial court and that there is the requisite clear, cogent and convincing evidence to support the order of permanent deprivation.

Accordingly, the Court of Appeals is reversed and the order of the trial court is affirmed.

HALE, C.J., ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

FINLEY, J. (dissenting)—Murder can never be countenanced lightly. This is not a case of murder.

We face here the ordered separation of a father and his two children. The only real evidence in support of permanent deprivation of child custody is an earlier crime which the trial court and now this court have decided should

haunt a reportedly rehabilitated man beyond the walls of prison, for the remainder of his life. Two key figures—the juvenile probation officer and the casework supervisor—appear to have played a critical role in the trial court's decision by their recommendations for permanent deprivation. Concerning the basis for the report and recommendation of the juvenile probation officer, the Court of Appeals stated:

> There was no showing that she had ever seen or interviewed Sego. Notwithstanding her general educational background, her qualifications to express the opinions she expressed, without interviewing Sego and the children, were at best debatable.

*In re Sego*, 7 Wn. App. 457, 465-66, 499 P.2d 881 (1972). Regarding reports of both the juvenile probation officer and the casework supervisor, the Court of Appeals stated:

> It is to be noted, however, that notwithstanding each witness had general educational qualifications, neither testified on the basis of any personal interview had with Sego, and the casework supervisor had never even seen, much less interviewed, the children.

*In re Sego, supra* at 471. It was upon the basis of these recommendations that the trial court reached its decision, in spite of its own conclusions as follows:

> Mr. Sego has the strongest of all rights known to the law in his claim for his blood children. He presents a very sympathetic and appealing picture as one who has attempted with all his strength to rehabilitate himself, cure his unfortunate habits, and overcome his past rash behavior. He indicates a deep love and concern for his children, and a real desire to reunite with them.

*In re Sego, supra* at 461-62.

To mildly state the matter, it is unthinkable that an order forever separating a father from his children should be based—even in part—upon the unsupported, arbitrary recommendations of supposed "experts" who have never bothered to meet or talk with the man whom they so readily condemn. As suggested by the Court of Appeals, alternatives to the "drastic irreversible remedy of deprivation"

should have been considered by the trial court, including continued temporary custody of the children by the maternal aunt and uncle. *In re Sego, supra* at 470. To order permanent deprivation upon a foundation fraught with painfully inadequate reports constitutes not simple but savage injustice.

For the reasons indicated, I would affirm the ruling of the Court of Appeals reversing the judgment of the trial court with directions for further evidentiary proceedings.