# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Dependency of<br>A.U.N.H. (DOB: 1/2/11) and<br>Z.D.H. (DOB: 1/8/10), | ) ) ) ) | No. 69212-7-I<br>(Consolidated with<br>No. 69213-5-I) |
| Minor children. | ) ) ) | DIVISION ONE |
| CAREY ALLEN HAYES, | ) ) | |
| Appellant, | ) ) | UNPUBLISHED |
| v. | ) ) ) | FILED: July 29, 2013 |
| STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, | ) ) ) ) | |
| Respondent. | ) ) | |

Cox, J. – Carey Hayes appeals the trial court's order terminating his parental relationship with his son, Z.D.H., and his daughter, A.U.N.H. Hayes argues that the Department of Social and Health Services (the "Department") failed to prove by clear, cogent, and convincing evidence that it offered him all necessary services reasonably available and capable of correcting his parental deficiencies within the foreseeable future. He also argues that the Department failed to prove that there was little likelihood that his parental deficiencies would be remedied so that his children could be returned to him in the near future. Substantial evidence supports the trial court's findings that the Department offered all necessary services and that there was little likelihood that conditions

would be remedied in the children's near future. We consequently affirm the termination order.

Hayes is the father of Z.D.H., born on January 8, 2010, and of A.U.N.H., born on January 2, 2011. The children's mother, Tajana Lashea Wallace, is not a party to this appeal.

At the time of his birth, Z.D.H.'s mother was incarcerated. Hayes cared for him for the first few months of his life until Hayes was arrested and incarcerated for violating a domestic violence protection order and for assaulting a police officer during his arrest. Hayes remained incarcerated from May 2010 until January 2011. While incarcerated, Hayes agreed to an order of dependency as to Z.D.H., which was entered by the court in August 2010.

At the time of A.U.N.H.'s birth, Hayes was incarcerated. The trial court found her dependent as to Hayes and her mother in June 2011.

The Department petitioned to terminate Hayes's parental relationship with A.U.N.H. and Z.D.H. as well as the children's relationship with their mother on January 4, 2012.

The trial court held an extensive fact-finding hearing on the petition to terminate both Hayes's and Wallace's parental rights. After the hearing, the trial court orally granted the Department's petition for termination of Hayes's parental rights. The trial court then entered written findings of fact, conclusions of law, and an order granting the petition to terminate the parent-child relationship as to Hayes.

Hayes appeals.

## SERVICES

Hayes argues that the Department failed to provide him with all the necessary services that were capable of correcting his parental deficiencies. We disagree.

Parental rights are a fundamental liberty interest.[1] To terminate the parent-child relationship, the Department must prove each of six statutory elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence.[2] If the Department meets all six prongs, there is an implicit finding of parental unfitness.[3] The Department must then demonstrate by a preponderance of the evidence that termination is in the best interest of the child.[4] Generally, we will not disturb the findings of the trial court as long as they are supported by substantial evidence.[5]

To satisfy the requirements of RCW 13.34.180(1), the Department must prove by clear, cogent, and convincing evidence that "the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided *and* all necessary services, reasonably available, capable of correcting the

---

[1] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

[2] In re Dependency of K.N.J., 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011).

[3] Id.

[4] In re Dependency of T.R., 108 Wn. App. 149, 160-61, 29 P.3d 1275 (2001).

[5] In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983) (quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

parental deficiencies within the foreseeable future have been expressly and understandably offered or provided . . . ."[6] Thus, the statute requires that the Department must offer the services expressly ordered by the trial court and that the Department provide other necessary services, reasonably available, which would correct the parental deficiencies.[7]

An appellate court will affirm a termination order if there is substantial evidence that the trial court could reasonably have found to be clear, cogent, and convincing.[8] Evidence is clear, cogent, and convincing when it shows the ultimate fact at issue to be "highly probable."[9] Because the fact finder has the advantage of observing the witnesses, deference to the trial court is particularly important in appellate review of a termination decision.[10]

Here, the Department offered all services ordered by the trial court in its dependency orders. Hayes assigns error to the trial court's findings that the Department offered all services ordered under RCW 13.34.130, including "domestic violence treatment, random urinalysis testing, parenting classes, drug and alcohol evaluation and a psychological evaluation."[11] But this finding was

---

[6] RCW 13.34.180(1)(d).

[7] In re Dependency of T.L.G., 126 Wn. App. 181, 200, 108 P.3d 156 (2005).

[8] In re the Matter of H.J.P., 114 Wn.2d 522, 532, 789 P.2d 96 (1990).

[9] In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (quoting Sego, 82 Wn.2d at 739).

[10] Id. at 144.

[11] Clerk's Papers at 279 (Finding of Fact 2.22).

supported by substantial evidence in the record. These were the services ordered by the dependency orders as to A.U.N.H. and Z.D.H. Thus, the Department offered Hayes all court ordered services, in compliance with RCW 13.34.180(1)(d).

Additionally, these services were all that were necessary to address Hayes's parental deficiencies within the foreseeable future. In the termination order's findings of fact, Hayes's parental deficiencies were connected to domestic violence and his role as an abuser. Thus, the offer of domestic violence treatment services by the Department was sufficient to address his parental deficiencies and meet the requirements of RCW 13.34.180(1)(d).

The trial court found that Hayes "has been inappropriately hostile or violent with the social worker, including in front of his children, with foster care parents, his wife, a police officer, and the mother of [his] children."[12] Though Hayes challenges this finding, it was supported by substantial evidence in the record. In 2010, when Hayes was arrested for violating a domestic violence protection order, he was also charged with assaulting a police officer. Hayes's social worker testified at the termination proceeding that Hayes would grow visibly angry and upset and lash out at her in front of A.U.N.H. and Z.D.H. "He went from—from using appropriate words to inappropriate words, foul language."[13] And during a visitation with his children, their mother arrived and attempted to take Hayes's backpack. In response, he bit her hand.

---

[12] Clerk's Papers at 280 (Finding of Fact 2.28).

[13] Report of Proceedings (July 17, 2012) at 341.

Hayes also did not demonstrate that he could "maintain his aggression or exercise decision-making to the benefit of his children. . . . The father has not demonstrated that he understands how his behavior affects his children when he is being hostile or observe their cues in response to his hostility [sic]."[14] These challenged findings were supported by substantial evidence in the record, and reflected parental difficulties that would likely have been addressed by domestic violence treatment. Hayes's social worker, the CASA assigned to his case, and Dr. Michael O'Leary, the psychiatrist who conducted a psychological evaluation of Hayes, all testified that they were concerned with Hayes's anger and control issues.[15]

Finally, the trial court found that, "[t]he father's failure to engage in domestic violence treatment has prevented him from making progress on" articulating "how domestic violence affects children."[16] It also concluded that "[t]he father has delayed engagement in the critical service for domestic violence and continues to display cognitive concerns as identified by Dr. O'Leary that place the children at risk."[17] These challenged findings of Hayes's parental deficiencies are linked to the domestic violence treatment services and are

---

[14] Clerk's Papers at 281 (Finding of fact 2.31).

[15] Report of Proceedings (July 16, 2012) at 186-87 ("It's the atmosphere that's created when the kids are there that there's the anger around them . . . ."); Report of Proceedings (July 17, 2012) at 127-31; Report of Proceedings (July 19, 2012) at 565, 574

[16] Clerk's Papers at 281 (Finding of Fact 2.36).

[17] Clerk's Papers at 282 (Finding of Fact 2.39).

supported by substantial evidence in the record. When Hayes testified at the termination proceeding, he did note that the treatment helped him "try to think before I react . . . ."[18] But Hayes was still unable to satisfactorily explain how his violent and aggressive behavior affected his children. More importantly, as noted above, he continued to exhibit this behavior.

Hayes argues that the Department should have offered him mental health counseling. He contends that, though this was not a service ordered by the dependency court, it was reasonably available and capable of correcting his parental deficiencies. But the domestic violence treatment referral was a service offered by the Department, targeted at addressing Hayes's parental deficiencies: his aggression, violence, and control issues.

Further, Hayes is unable to demonstrate how mental health services would have better addressed his anger and control issues. He notes that Dr. O'Leary opined that he "suffered from adjustment disorder with mixed disturbance of emotions and conduct as well as mixed personality disorder." But Hayes fails to note that Dr. O'Leary recommended domestic violence treatment, not mental health services in his report. Thus, after examining Hayes, Dr. O'Leary felt that this treatment would sufficiently address Hayes's parental deficiencies.

Hayes argues that his social worker was aware of his mental health problems and was thus required to order mental health services that would have addressed his "anger and hostility. . . ." But the social worker's alleged

---

[18] Report of Proceedings (July 16, 2012) at 80.

7

awareness of his mental health problems did not require the ordering of such services in view of Dr. O'Leary's recommendations. He believed that these difficulties could be addressed by *domestic violence treatment* services. In view of this record, it is unclear why more was required in this case.

Hayes contends that his case is akin to In re Dependency of T.L.G.,[19] where this court held that the Department had failed to offer the parents all necessary services. But in T.L.G., the Department was aware that the father's bipolar disorder and mother's depression were "*the* issue[s]" that resulted in termination of the parents' relationship with child.[20] And yet, the Department did not offer any mental health services to address these illnesses, about which they knew.[21] Thus, this court held that the reasonable services necessary to correct the parents' deficiencies were not offered by the Department.[22]

Here, in contrast, all mental health deficiencies raised by Hayes in his appeal relate to anger and aggression, difficulties that would have been addressed by the domestic violence treatment program to which the Department offered referrals. Thus, the Department did not fail to address Hayes's mental health deficiencies but, instead, offered services that were likely to target the particular mental health difficulties with which Hayes struggled.

---

[19] 126 Wn. App. 181, 108 P.3d 156 (2005).

[20] Id. at 199.

[21] Id. at 199-200.

[22] Id.

Hayes also argues that the Department was required to offer him employment services because it "knew that employment had been an issue for him throughout the dependency process and he had very limited financial resources."[23] This was not a service required by the dependency order, nor was it a service that would have corrected his parental deficiencies.

It is true that Hayes struggled to find employment. As the trial court recognized, these financial difficulties may have limited his ability to enroll in domestic violence treatment because the Department refused to pay for these services. The trial court did note its concern "about the Department's policy of not paying for a portion of domestic violence batterers' treatment even where such treatment is recommended and may be unaffordable."[24] But it went on to find that "the father was able to access a very low cost program . . . and still failed to attend regularly."[25] The trial court also noted that, "[t]he father provided no explanation for why after paying for a month, he would not attend the entire month."[26] These challenged findings of fact were supported by substantial evidence in the record. As Hayes's treatment provider, Blake Johnson, noted, Hayes paid $50.00 a month to go to weekly treatment, but he was only attending classes once a month. This evidence, in addition to Johnson's testimony that Hayes only attended six classes during his time with the program, supports the

---

[23] Appellant's Opening Brief at 17.

[24] Clerk's Papers at 279 (Finding of Fact 2.22).

[25] Id. at 280.

[26] Id. (Finding of Fact 2.26).

findings of fact that he simply failed to comply with the domestic violence treatment service.

Given that Hayes's failure to attend domestic violence treatment was not entirely related to his financial situation, employment services were not services that could have addressed his core parental deficiencies.

Finally, Hayes argues that the Department was required to provide services to allow him to maintain a "safe, stable living environment" for his children. We disagree. The dependency order as to Z.D.H. required Hayes to "establish and maintain a safe, stable, living environment suitable for the child." But the dependency court ordered no services associated with this requirement. Nor did the trial court rely on Hayes's housing instability in its finding of parental deficiencies at the termination hearing. Thus, housing services would not have addressed any core parental deficiencies if the Department had offered them to Hayes. Consequently, they were not services that needed to be provided to Hayes under RCW 13.34.180(1)(d).

Hayes argues that the burden of offering or providing the needed services is on the State. We agree. But we also conclude that the State did so in this case. It had no burden to provide the additional services on which Hayes relies in this appeal.

Hayes also argues in his reply brief that we must disregard the Department's references to facts established only in the dependency orders. We agree. And we have not done so.

10

## PARENTAL DEFICIENCIES REMEDIED IN NEAR FUTURE

Hayes argues that the trial court erred in concluding that there was little likelihood conditions would be remedied so that his children could be returned to him within the near future. Because substantial evidence supported the court's finding, we disagree.

RCW 13.34.180(1)(e) requires the Department prove that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." The focus of this element is whether a parent has corrected his or her parental deficiencies.[27] "A determination of what constitutes the near future depends on the age of the child and the circumstances of the placement."[28] Thus, "[a] matter of months for young children is not within the foreseeable future to determine if there is sufficient time for a parent to remedy his or her parental deficiency."[29]

As noted above, Hayes's parental deficiencies centered on his past domestic violence and the anger and control issues connected with this violence. There was substantial evidence in the trial record to support the conclusion that these issues would not have been remedied within the foreseeable future. By the time of trial, Hayes had completed only six domestic violence treatment classes. Though services were ordered in June 2011, Hayes did not begin

---

[27] In re Dependency of T.R., 108 Wn. App. at 165.

[28] T.L.G., 126 Wn. App. at 204.

[29] In re Dependency of M.R.H., 145 Wn. App. 10, 28, 188 P.3d 510 (2008).

11

attending classes until the spring of 2012. Even when he began attending classes, his attendance was sporadic, despite the fact that his treatment provider testified that he told Hayes to come every week. Hayes attended a class in April 2012, two in May 2012, and two in July 2012.

While Hayes and his treatment provider testified that the domestic violence treatment was helping Hayes to understand the effects of violence, there was insufficient proof that this progress would occur within his young children's near future. During the fact-finding hearing, Dr. O'Leary was asked whether "five group sessions [would] constitute compliance" with the treatment he was seeking for Hayes."[30] He replied, "No. Five sessions would probably be *just the beginning*."[31] Additionally, the CASA and social worker assigned to Hayes's case testified that they believed that he continued to demonstrate he is unable to deal with his anger in a way that is not destructive to his children's lives.

Further, Hayes's demonstrated his anger and inability to control his responses to others during the dependency period. As noted above, he bit his children's mother during a visitation in October 2011. He also raised his voice and became visibly enraged when speaking to his social worker. These incidents, combined with Hayes's failure to follow-through with the domestic violence treatment until four months before the termination hearing, support the

---

[30] Report of Proceedings (July 19, 2012) at 611.

[31] Id. (emphasis added).

trial court's conclusion that Hayes's parental deficiencies could not be remedied in the near future.

Hayes argues that he was progressing in domestic violence treatment and notes that his treatment provider testified that he had markedly improved "even though he had only attended six classes." Indeed, the trial court acknowledged this progress in its findings of fact, noting that, "[t]he father is reportedly doing the best that he can in domestic violence treatment."[32] But the court then went on to find "that is not enough to alleviate the risks of his long history of violence . . . ."[33] Hayes's failure to begin domestic violence treatment until four months before the termination hearing, combined with his continued aggression, provided sufficient evidence for the court to conclude that his deficiencies would not be remedied within the children's near future.

Additionally, Hayes argues that he did not begin services until April at least in part because of the Department's failure to pay for his domestic violence treatment services. But, as noted above, Hayes's treatment provider testified that, though he paid for weekly classes, he only attended once or twice a month even when he started attending treatment. Further, Hayes told his social worker and Dr. O'Leary that he did not believe treatment was necessary. This statement indicated that his resistance to treatment was an important factor in his delay in seeking services.

---

[32] Clerk's Papers at 280 (Finding of Fact 2.27).

[33] Id.

Hayes also contends that the court's conclusions ignored the services in which he had participated. But Hayes's completion of the urinalysis testing and parenting classes did not address the largest deficiency in his parenting: his anger and lack of control. Thus, they are not relevant to the question of whether he could remedy these deficiencies within the near future.

Finally, Hayes argues that the trial court's ruling ignores his abilities as a parent. In its oral ruling, the trial court did note that Hayes was affectionate with his children, and that they had affection for him. In its findings of fact, the trial court also noted that Hayes "generally engaged in visitation." But Hayes's lack of affection and failure to engage in visitation were not the basis of his parental deficiencies. Thus, this argument fails to address the parental deficiencies on which termination was based.

We affirm the termination of Hayes's parental rights to A.U.N.H. and Z.D.H.

_Cox, J._

WE CONCUR:

_Jau, J._     _Becker, J._

14